[Civ. No. 4318.   Second Appellate District, Division One.—October 23, 1924.]

RENETTE HANSEN, Respondent, v. J. W. HEVENER et al., Appellants.

[1] VENDOR AND VENDEE — CONTRACT TO PURCHASE REAL PROPERTY — CONSTRUCTION—CERTAINTY OF TERMS.—Where a contract for the purchase of real property, evidenced by certain escrow instructions signed by the parties, calls for an escrow deposit of a specified sum, a further cash payment on a given date, "$1000.00 when papers are down, balance of $1200.00 by execution of mortgage at 7%. Dated from close of escrow, payable on or before one year

---

1. Certainty of contract requisite for specific performance, note, 26 Am. Dec. 661.  See, also, 25 R. C. L. 218.

with interest at 7% from close of escrow," and such escrow instructions further provide that the seller is to deliver into escrow a certificate of title showing title "vested in owner free from incumbrances except . . . $1200.00 mortgage now being executed," and that the escrow is to be completed within a given time, such agreement (while not entirely free from criticism) sufficiently shows when the $1,000 is to be paid, and likewise shows what property is to be encumbered, by whom the mortgage is to be executed and when the interest thereon is to be paid.

[2] ID.—LACK OF MUTUALITY—REMEDIES OF VENDOR.—The fact that such contract provides that, should the purchaser fail to consummate the agreement of purchase, the purchaser's deposit will be forfeited to the seller, does not limit the seller in his damages to such deposit and does not render the contract unenforceable because of alleged lack of mutuality, where by the terms of such contract the owner "agrees to sell" and the other party "agrees to purchase" the property in question.

[3] ID.—OWNERSHIP OF PROPERTY—ABSENCE OF INTEREST IN VENDOR—SPECIFIC PERFORMANCE.—Assuming that, at the time the contract was entered into between the parties, the vendors had no interest in the property which they agreed to sell, it would not necessarily follow that at the time they would be called upon to execute the deed to the property they would not be the owners thereof and fully capable of carrying out the agreement according to its terms; and if so, and further assuming that other equities permitted, the purchasers would be entitled to specific performance of the contract.

[4] ID.—RIGHT TO SPECIFIC PERFORMANCE—DAMAGES—JURISDICTION—JUDGMENT.—In an action for specific performance of a contract to sell real property, or for damages in the absence of the ability of the defendant to specifically perform, in order that a judgment awarding damages may stand it must appear that *prima facie* the plaintiff had the right to a specific performance of the contract; but the mere fact that the defendant has by his own act made a specific performance impossible does not oust the court of jurisdiction to render a money judgment for any damages which the plaintiff may have sustained by reason of defendant's breach of the contract.

[5] ID.—PLEADING—DISTINCTION BETWEEN LAW AND EQUITY—RIGHT TO SOME RELIEF.—Although in some jurisdictions, especially those

2.  Mutuality of contract sought specifically to be enforced, note, 23 Am. Dec. 423.  See, also, 25 R. C. L. 232.

Stipulation in contract for forfeiture of particular sum as defense to action for specific performance, note, 8 Ann. Cas. 359.

3.  See 25 R. C. L. 245.

4.  Damages or compensation as allowable on denial of specific performance, note, Ann. Cas. 1912A, 806.  See, also, 25 R. C. L. 345.

in which the distinction between suits in equity and actions at law is recognized, where at the time of the commencement of suit plaintiff knows that specific performance is impossible, no damages are recoverable on the equity side of the court, and plaintiff is obliged to resort to the law side of the court for his remedy, in this state, so far as the form of the action is concerned, a bill in equity is not distinguishable from an action at law, and it is only necessary that the complaint show a state of facts entitling plaintiff to some relief, and thereupon (assuming the evidence to justify it) the court will afford such relief without reference to the manner or form of the pleading.

[6] ID.—BAD FAITH—PLEADING.—In an action to compel specific performance of a contract to sell real property, or for damages in the absence of ability of the defendants to specifically perform, where the complaint, besides setting forth the facts showing bad faith, contains the allegation that defendants' failure and refusal to comply with their contract "is without just or lawful reason or excuse," it is sufficient in its allegations of defendants' bad faith.

---

(1) 36 Cyc., p. 590.   (2) 36 Cyc., p. 626 (Anno.).   (3) 36 Cyc., p. 575 (Anno.).   (4) 36 Cyc., pp. 747, 748.   (5) 36 Cyc., p. 749. (6) 36 Cyc., p. 773.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Walton J. Wood, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Daly, Daly & Todd for Appellants.

Ray Meacham and Bruce Mason for Respondent.

HOUSER, J.—In this action plaintiff sued for the specific performance of a contract to convey real property, or in the event that specific performance could not be had, for resultant damages.

The agreement of the parties was evidenced by certain escrow instructions by which "J. W. Hevener agrees to sell and Mrs. Renette Hansen agrees to purchase" the property in question for the sum of $2,700.   The remainder of the escrow instructions which are here material and which were signed by all the parties were as follows:

"Escrow deposit herewith $50.00.   Additional cash $450.00 on May 24, 1921, and on or before $1000.00 when papers are down, balance of $1200.00 by execution of mortgage at

7% dated from close of escrow, payable on or before one year with interest at 7% from close of escrow. Privilege to pay on or before one year by payment of no days unaccrued interest.

"The seller hereunder agrees to deliver into this escrow clear certificate of title, together with municipal certificate showing title to the above described property vested in owner free from incumbrance except liquor clause, building restrictions, water company rights and $1200.00 mortgage now being executed, and lease of oil right given to Shell Oil Co.

"The Long Beach Savings Bank and Trust Company is also instructed to draw instruments in customary form used by it as follows: Grant warranty deed from J. W. Hevener and wife, to Renette Hansen a widow.

"It is agreed that in case seller performs his part of this agreement, and the purchaser fails to make further deposit as required herein, the escrow deposit shall be forfeited to the seller and the Long Beach Savings Bank and Trust Company is hereby instructed to pay the same to the seller without further instructions."

The complaint shows a compliance on the part of plaintiff with each of the acts which by the terms of the agreement between the parties plaintiff was called upon to perform, besides a demand by plaintiff for performance by defendants, that they likewise comply with the terms of said agreement on their part to be kept and performed. Other allegations of the complaint, besides that of a refusal by defendants to convey the property, are, in substance, that at a time antedating the contract between plaintiff and defendants the property in question had been purchased by defendants under a contract of sale by which defendants became obligated to make certain payments on account of the purchase price thereof; that they failed to make such payment and, prior to the time said contract between plaintiff and defendants was entered into, the party with whom defendants had contracted for the purchase of the property did "take over said property and did thereby foreclose all the right, title and interest of defendants in said property"; "that said defendants at the time of entering into said agreement, of which Exhibit A (the agreement between the parties) is a copy, had no right, title or interest in or to

said property, and well knew that they had no right, title or interest, and well knew that said seller, under said contract of purchase, had foreclosed all their, said defendants', right, title and interest in and to said property under said contract of purchase; that said defendants' failure and refusal as aforesaid to comply with said contract, of which Exhibit A is a copy, is without just or lawful reason or excuse.'' The usual averments of damage and prayer for alternative relief were also contained in the complaint. The findings of the court, which were in general accord with the allegations of the complaint, included a finding:

"That said failure and refusal of said defendants to comply with the terms of said written agreement and to convey the said real property to plaintiff is and was without just or lawful reason or excuse and is and was in bad faith. That said defendants wilfully, fraudulently, voluntarily, negligently in bad faith and in collusion with one Jonah Jones, allowed and permitted a certain written contract by which they, said defendants, were purchasing said property from said Jonah Jones, to be foreclosed against them by said Jonah Jones subsequent to said written agreement of May 21, 1921, and thereby in bad faith allowed the title to said property to be placed beyond their, said defendants, control, although said defendants were at all times well able to comply with the terms of said contract with said Jonah Jones, and were at all times prior to said foreclosure by said Jonah Jones well able to obtain title to said real property and thereby comply with the terms of said written agreement of May 21, 1921."

The findings were also to the effect that about three days after the execution of the agreement between plaintiff and defendants, and prior to the foreclosure of defendants' contract to purchase the property, an oil well was "brought in" on property located within seven hundred feet of the lot in question, and by reason thereof the value of the property involved in the controversy was greatly increased. The conclusions of law were that, because specific performance could not be had, plaintiff was entitled to damages against defendants in the sum of $3,311.74, and costs of suit. Judgment was entered accordingly, and defendants appeal therefrom.

[1]    Appellants' first contention is that the escrow instructions which constituted the written agreement between plaintiff and defendants are insufficient upon which to predicate either an action in specific performance of for damages thereunder and that the agreement is uncertain as to the time when the $1,000 mentioned therein is payable, or what property is to be encumbered with a $1,200 mortgage, or by whom the mortgage is to be executed, or when the interest thereon is to be paid. But, while the agreement is perhaps not entirely free from criticism in each of the respects to which attention is directed, it nevertheless appears that the $1,000 is to be paid when the "papers are down." The expression "papers are down" unquestionably had reference to the deposit with the escrow-holder of the instruments necessary to a consummation of the agreement; and by the terms of the agreement the escrow was to be completed within a certain fixed time. Consequently it clearly appears that the payment of the $1,000 was required on or before the completion of the escrow. From an examination of other terms of the agreement, it is likewise apparent that because the purchase price of the property was the sum of $2,700 and all but $1,200 was taken care of by cash payments by the purchaser, and because the certificate of title was to show clear title except as to the $1,200 mortgage "now being executed," no other reasonable conclusion could be reached than that the mortgage was to be executed by the purchaser in favor of the seller of the property and was to cover the property agreed to be purchased. As to the time when the interest was to be paid, the agreement is specific in that it provides that the mortgage shall be "dated from the close of escrow, payable on or before one year, with interest at 7% from close of escrow."

[2]    On behalf of appellants it is also urged that the contract cannot be specifically enforced because of alleged lack of mutuality in the rights of the respective parties thereto to insist upon performance of the contract. Appellants' point is that, because the contract provides that if the purchaser should fail to consummate the agreement of purchase, the purchaser's deposit of $50 would be forfeited to the seller, the agreement amounted to nothing more than an option in favor of the proposed purchaser, which, without incurring any liability to the seller, the purchaser might

exercise or not as suited her convenience or her fancy. It will be noted, however, that by the terms of the contract "J. W. Hevener *agrees to sell* and Mrs. Renette Hansen *agrees to purchase*" the property in question; and, although if the purchaser should fail to carry out the terms of the agreement she must forfeit her deposit, there is no agreement between the parties that in such event the purchaser shall be relieved from further liability for any damages which the seller may sustain by reason of the purchaser's breach of contract. For aught that appears, the forfeiture of the deposit by the purchaser has no effect upon her liability; consequently the seller would not be limited in his damages, if any, to the retention by him of the purchaser's deposit; and the "lack of mutuality" of which appellants complain would not be present.

It is further contended by appellants that because the complaint contains an allegation to the effect that at the time the agreement was executed defendants' interest in the property had been foreclosed, it would follow that there could be no specific performance of the contract, and consequently that plaintiff would be limited to an action at law for the recovery of damages.

[3] Assuming as true that at the time the contract was entered into between the parties defendants had no interest in the property which they agreed to sell, it would not necessarily follow that at the time defendants would be called upon to execute the deed to the property they would not be the owners thereof and fully capable of carrying out the agreement according to its terms. If so, further assuming that other equities permitted, no reason would be apparent for denying the plaintiff a specific performance of the contract. [4] It would seem to be the general rule that in an action for specific performance, or for damages in the absence of the ability of the defendant to the action to specifically perform, in order that a judgment awarding damages may stand it must appear that *prima facie* the plaintiff had the right to a specific performance of the contract. (*Morgan* v. *Dibble,* 43 Cal. App. 116, 122 [184 Pac. 704].) But the mere fact that a defendant has by his own act made a specific performance impossible does not oust the court of jurisdiction to render a money judgment for any damages which the plaintiff may have sustained by reason

of defendant's breach of the contract. **[5]** In many jurisdictions, especially in those in which the distinction between suits in equity and actions at law is recognized in all its original strength, where at the time of the commencement of the suit the plaintiff knew that specific performance was impossible, no damages are recoverable on the equity side of the court, but the plaintiff is obliged to resort to the law side of the court for his remedy. In this state, so far as the form of action is concerned, a bill in equity is not distinguishable from an action at law. "There is in this state but one form of civil actions for the enforcement or protection of private rights and the redress or prevention of private wrongs." (Sec. 307, Code Civ. Proc.) As is said in the case of *Spect* v. *Spect,* 88 Cal. 437 [22 Am. St. Rep. 314, 13 L. R. A. 137, 26 Pac. 203] : "Courts look to the substantial rights of the parties for the purpose of determining the remedy to which they are entitled, irrespective of the form of the complaint under which the remedy is sought." It is only necessary that the complaint show a state of facts entitling plaintiff to some relief, and thereupon (assuming the evidence to justify it) the court will afford such relief without reference to the manner or form of the pleading. (*Carpentier* v. *Brenham,* 50 Cal. 549.) In the case of *Merriman* v. *Walton,* 105 Cal. 403 [45 Am. St. Rep. 50, 30 L. R. A. 786, 38 Pac. 1108], the statement is made that "under the system of procedure which obtains in this state, where the various kinds of relief are administered by the same tribunal, and where there is but one form of civil action for the enforcement or protection of civil rights, a party who presents a complaint showing his right to the relief asked is not to be denied that relief because he might have sought it under a different form of action." And see, also, *Hurlbutt* v. *Spaulding Saw Co.,* 93 Cal. 55 [28 Pac. 795] ; *Thompson* v. *Laughlin,* 91 Cal. 313 [27 Pac. 752] ; *Rowe* v. *Blake,* 99 Cal. 167 [37 Am. St. Rep. 45, 33 Pac. 864] ; *Jones* v. *Steamship Cortes,* 17 Cal. 487 [79 Am. Dec. 142].

The principle that the form of action is immaterial and that the court will retain jurisdiction and grant such relief as is warranted by the facts pleaded and proved is illustrated in the case of *Krasnow* v. *Topp,* 128 App. Div. 916 [112 N. Y. Supp. 546], where the plaintiff sought specific performance or damages in lieu thereof. The complaint, as

here, contained an allegation that defendant could not perform and give clear title because a house on an adjoining lot encroached upon the property which was the subject of the action. With reference to the point here under consideration the court said: "The claim was that the complaint itself showed that the defendant could not perform, and that, therefore, the case was not of equitable jurisdiction, as specific performance will not be decreed where it is impossible. But it did not appear that it was impossible. The defendant might, for aught that appeared, put himself in a position to perform by acquiring title to the four-inch strip encroached upon. The case is no different than if the defendant had not owned any of the land he contracted to convey. The motion to send the case to the jury calendar was, therefore, properly denied; and as at the close it appeared that the defendant could not perform, the court had the right to give the money judgment prayed for."

Speaking of the rule which in suits for specific performance formerly prevented an award of damages where the plaintiff either pleaded defendant's disability to specifically perform, or had knowledge of such inability, in the case of *Haffey* v. *Lynch*, 143 N. Y. 241 [38 N. E. 298], it is said: "The rule has been modified since the code practice, which authorizes the joinder of legal and equitable causes of action; and, while the equitable relief will be denied in such a case, now the action will be retained, and the issue as to the breach of contract and damages will be sent to the jury for trial." It is apparent in the instant case that while it is shown by the complaint that at the time the action was commenced plaintiff knew that defendants could not specifically perform, it did not appear but that defendants might procure title to the property before the action was determined. In addition thereto, the facts as pleaded, without reference to any question of specific performance, entitled plaintiff to damages; and, as shown by the cases heretofore cited, the court was not only authorized, but it was its duty to grant such relief as the evidence warranted.

[6] It is next urged by appellants that the complaint is insufficient in its allegations of defendants' bad faith. The complaint, besides setting forth the facts showing bad faith, contained the allegation that defendants' failure and

refusal to comply with their contract "is without just or lawful reason or excuse." In the case of *Shaw* v. *Union Escrow etc. Co.,* 53 Cal. App. 66 [200 Pac. 25], where a similar question on facts analogous to those here under consideration was presented to the court, it was held that such a complaint was sufficient. The court said: "The complaint did allege the making of the contract, the breach thereof, the value of the property at the time of the breach, and that the defendant 'without any just cause or just excuse' refused to make conveyance of the property. We think that the complaint was sufficient and that it tendered all of the issues which were passed upon by the court. If it was imperfect in any respect the defect was waived by the reason that there was no demurrer to the complaint and the parties proceeded throughout the trial with the evident view that all of the issues adjudicated were properly before the court."

Appellants' final contention is that the finding of the court that defendants were guilty of bad faith is not supported by the evidence. Without a statement of what is shown by the reporter's transcript of the evidence, it may be said that an examination thereof discloses ample facts for the conclusion reached thereon by the trial court.

It is ordered that the judgment be and the same is affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1924.

All the Justices concurred.