[Civ. No. 903. Fourth Appellate District.—September 24, 1931.]

RICHARD C. CUSHING, Respondent, v. ADOLPH LEVI et al., Appellants. (Two Cases.)

Edward H. Whelan and Anthony T. Procopio for Appellants.

Stearns, Luce & Forward for Respondent.

FINNEY, J., *pro tem.*—This is a suit for the specific performance of a contract for the sale of real estate or for damages in case specific performance cannot be had. From a judgment in favor of the plaintiff the defendants appeal.

On November 21, 1927, the plaintiff and the defendants entered into an agreement, the terms of which, so far as important here, are as follows:

"For and in consideration of ten ($10) dollars, and other valuable consideration, receipt of which is hereby acknowledged, we hereby give to Richard C. Cushing of Los Angeles, California, an exclusive right to buy the following described real property situate in the city of San Diego, county of San Diego, State of California, on the following terms and conditions:

"Pueblo lots 1225, 1226 and 1239, and the west one-half of pueblo lot 1223, containing approximately 518 acres, at the total purchase price of eighty thousand ($80,000) dollars, in cash, to be paid as follows:

"On or before December 1, 1927, the sum of one thousand ($1,000) dollars;

"On or before April 1, 1928, the further sum of nineteen thousand ($19,000) dollars, and the balance of the purchase price, viz.: sixty thousand ($60,000) dollars, to be paid as follows: Twenty thousand dollars on or before April 1, 1930, $20,000 on or before April 1, 1932 and $20,000 on or before April 1, 1934. The above-mentioned $60,000 to be evidenced by three promissory notes of $20,000 each, secured by a first mortgage on all of above-described property, payable as above stated, and shall bear interest at the rate of 6 per cent per annum, payable quarterly, from and after said April 1, 1928, providing, however, that the said Richard C. Cushing shall have paid to the undersigned, on or before February 1, 1928, interest on $79,000, at the rate of 6 per cent per annum, until April 1, 1928, amounting to the sum of $750. . . .

"It is agreed and understood that this agreement shall be binding on the heirs and assigns of the respective parties hereto, but said Richard C. Cushing hereby quitclaims any right, title or interest of any nature whatsoever that he may obtain to any of said property under the terms of this agreement in case of his failure to fulfil the terms and conditions hereof."

At the time of the execution of the agreement plaintiff did not know that Adolph Levi was married or that Eleanor Levi was his wife.

On December 1, 1927, plaintiff paid to defendants the sum of $1,000, as required by the agreement, and on February 1, 1928, there became due thereon interest in the sum of $790. This sum was not paid to the defendants, but on February 6, 1928, the amount was tendered to and refused by them. The delay in offering payment and in making such tender was caused by the illness of the plaintiff at the time in question. On February 4th the plaintiff received a letter from the defendants, dated February 3, 1928, stating that inasmuch as he had not seen fit to make the payment due on February 1st the agreement had been canceled. Immediately on receipt of this letter the plaintiff left his home in Los Angeles and proceeded by train to San Diego, arriving that evening. He immediately attempted, unsuccessfully, to communicate with defendant Edgar B. Levi, who was in charge of business relating to this agreement. On the next day, Sunday, February 5th, the plaintiff conferred with the said Edgar B. Levi and showed him a letter from plaintiff's doctor, certifying to his illness, but the defendant Edgar B. Levi ignored the same and stated plaintiff had defaulted in his interest payment and was "out"; that he had a deal on for the land with other parties, but if it did not go through he would take the matter up with plaintiff. At this time plaintiff told Levi that he was prepared to pay the interest, together with proper compensation for the delay, and for the latter purpose offered Levi the sum of $100, which was refused. On the next day, February 6th, plaintiff again conferred with Levi and formally offered him $790 in cash, as a tender of the interest due, but Levi refused the tender and stated to plaintiff that he was "out of luck", as he, Levi, was then on his way to close another and better deal, and for that reason he was glad plaintiff had not met his interest payment on February 1st. After plaintiff had made his tender, as above stated, Levi closed the "other deal" and on that date the defendants entered into a written agreement with one W. C. Zinkand for the sale of the same property for the sum of $112,500, and received, as first payment thereon, the sum of $5,000.

On February 14, 1928, plaintiff commenced this action against the defendants, and in his complaint alleged, among other things, the execution of the contract, the payment

of the $1,000 on December 1, 1927, and the tender of the interest due on February 1, 1928, and that his failure to pay the same promptly was due solely to the fact that he was incapacitated from transacting business by reason of illness, and that his delay and neglect were inadvertent, unintentional and excusable, and he further alleged the bad faith of the defendants in breaching the contract and that he had performed all the conditions of said agreement on his part and was ready and willing to make all payments required of him by the terms thereof; and that the $80,000 mentioned as the consideration for said contract was and is the fair market value of said property. The defendants answered and put in issue all the material allegations of the complaint, and as a further defense defendant Adolph Levi alleged that he was at all times mentioned a married man; that said property was community property and that his wife had not joined in nor, in writing or otherwise, consented to the execution of said agreement. Thereafter a complaint in intervention was filed by Eleanor Levi, which alleged she was the wife of defendant Adolph Levi; that the property in question was community property and that she had not authorized the execution of the contract in question nor in any way consented to it, and she prayed that the agreement be canceled and that the plaintiff be restrained from asserting any right, title or interest in or to said property.

1. Appellants contended that the specific performance of a contract will not be required by the court nor damages awarded, in lieu thereof, in the absence of an adequate consideration for the contract, and that such consideration must be specifically alleged in the complaint and found by the court and supported by clear and convincing proof, and it is further contended that no such allegation, finding nor proof has been made in this case and, therefore, the judgment appealed from must be reversed.

Appellants seem to contend that if the value of the land at the time of the execution of the contract was a few thousand more than the price named in the contract, then the consideration is not adequate. This is not the law. The requirement of an adequate consideration in an action for specific performance does not mean that the contract price shall measure up to the highest market

value of the property, but merely that it shall be a substantially just and fair valuation under all the circumstances of the case. (*Law* v. *Title Guarantee & Trust Co.*, 91 Cal. App. 621 [267 Pac. 595].) As said in *Boulenger* v. *Morison*, 88 Cal. App. 664, 669 [264 Pac. 256, 259]: " 'Adequate consideration,' as used in section 3391, subdivision 1, of the Civil Code, does not necessarily mean the highest price obtainable, but a price that is fair and reasonable under all the circumstances; it is always peculiarly a question of fact for the trial court to determine, in the light of all the facts and circumstances of each particular case."

A complaint in an action for specific performance of a contract to sell real estate need not allege *in haec verba* that the contract is supported by an adequate consideration, but an allegation that the value of the real estate at the time of the execution of the contract did not exceed $500, the consideration mentioned in the contract, with interest, and that $440 with interest had been paid and the remainder deposited in court for the vendor, alleges adequate consideration within Civil Code, section 3391, prohibiting specific performance against a party who has not received an adequate consideration for the contract. (*Boyd* v. *Warden*, 163 Cal. 155 [124 Pac. 841].) ██ In the complaint in the case at bar, paragraph VII, it is alleged as follows: "That the sum of $80,000, mentioned in said contract as the total purchase price of said property and as the consideration for said contract, is and at all times since the execution of the said contract has been a fair and reasonable value of said property."

This allegation is more definite than the pleading in *Boyd* v. *Warden, supra,* and is without doubt a sufficient allegation of the adequacy of the consideration. It shows that the contract was supported by an adequate consideration and was, as to the defendants, just and fair. The finding of the court having reference to an adequate consideration reads as follows:

"XII.

"That said real property described in said contract and above described was not at any time between the 21st day of November, 1927, and the 6th day of February, 1928, of a fluctuating value, and did not during said time fluctuate

in value and was not at any time by nature of fluctuating value; and that said property did not materially fluctuate in value during said period of time; and that it did gradually increase in value to about the sum of $90,000 during said period of time.''

It is a fair inference and deduction from this finding, construed in connection with paragraph II of the findings, wherein it is found that by the terms of ''said contract the defendants granted to the said plaintiff the exclusive right to buy the property above described at the total purchase price of $80,000 in cash'', that $80,000 was approximately the value of the property at the time of the execution of the contract, because, according to said finding XII, the value of the land gradually increased from the figure named in the contract, to wit, $80,000, to about $90,000 during the period intervening between the time of the execution of the contract, on November 21, 1927, and February 6, 1928. Findings of the trial court are to be liberally construed, and every reasonable inference or deduction which may be drawn therefrom will be indulged in support of the judgment. (2 Cal. Jur., pp. 870, 871.) Under the liberal rules of construction referred to, we hold that by paragraph XII of the findings, construed with other findings in the case, the court has found that the value of the land at the date of the execution of the contract was $80,000, and from this finding we must conclude, since the contract was entered into freely and voluntarily by the parties, that $80,000 was an adequate consideration to support the contract and that it was just and fair to all the parties. Finding No. XII is amply supported by the evidence, the defendant Adolph Levi himself testifying that $80,000 was, in his opinion, the market value of the land at the date of the execution of the contract. It is apparent, therefore, that an adequate consideration for the contract has been alleged, found and proved in this case.

It seems to be a general rule that in a suit for specific performance or damages the plaintiff must allege and prove an adequate consideration and show a right to have the contract specifically performed, but what is an adequate consideration, and whether or not specific performance shall be required, when possible, are questions addressed almost solely to the discretion and determination

of the trial court, and each particular case is to be determined upon its own merits and in view of the situation of the parties and all the facts and surrounding circumstances. (*Wilson* v. *White,* 161 Cal. 453, 465 [119 Pac. 895]; *Hansen* v. *Hevener,* 69 Cal. App. 337. [231 Pac. 361]; *Boulenger* v. *Morison, supra.*) ■ If the defendant has disabled himself from conveying the land, or if his wife, not being bound by the contract, refuses, through bad faith, to join in his conveyance, the court may, upon proof of an adequate consideration and the right to a conveyance, deny specific performance and give a money judgment against the defendant for any and all damages suffered by the plaintiff. (39 Cyc. 2084; *Kaufman* v. *Bell,* 89 Cal. App. 610 [265 Pac. 317].) ■ In the case at bar the plaintiff established by evidence an adequate consideration and a clear right to specific performance, and specific performance was denied by the court because defendants had fraudulently refused to convey, having sold the land to another buyer for a much larger price, and, therefore, the court denied specific performance and gave the plaintiffs a money judgment for less than one-third of the profit defendants expected to realize on the sale to the third party. Defendants therefore cannot complain of this judgment as to amount or otherwise.

■ Where a contract for the sale of real estate is supported by an adequate consideration at the time of its execution, mere increase thereafter in the value of the land will not make the consideration inadequate or the contract inequitable, or thereby deprive the court of jurisdiction to render a judgment for specific performance. Consequently, the fact that in this case the land gradually increased in value from $80,000, on November 21, 1927, to $90,000 on February 6, 1928, when the contract was breached by the appellants, did not render the contract so unfair or the consideration so inadequate, as to them, as to require the court to refuse specific performance, where it appears that the appellants deliberately disabled themselves from making a conveyance and refused to convey to the respondent, and in such case the court may deny specific performance and render a money judgment for any damages which the respondent may have sustained by reason of the appellants' breach of the contract. (*Hansen* v. *Hevener, supra; McCowen* v. *Pew,* 147 Cal. 299, 303 [81 Pac. 958].)

104

2. Appellants contend that time was of the essence of the contract sued upon in this case and that the court erred in finding to the contrary and in excusing the delay of five days in the payment of $790 which became due thereon February 1, 1928. Time was not expressly made the essence of this contract and the contention that it was such rests chiefly upon the assumption on the part of the appellants that the contract was merely an option, unilateral and not mutually binding upon the parties and that time is always of the essence of an option. ■ It is probably true the instrument in question was an option—a mere offer to sell—and not binding upon the optionee until Cushing, the optionee, signified his desire to accept the same by paying thereon the sum of $1,000 on December 1, 1927, as provided in the option. There is no dispute about this payment. Thereupon the instrument ceased to be an option and became an executory contract of sale, binding upon both optionor and optionee. (*Smith* v. *Post*, 167 Cal. 69 [138 Pac. 705]; *Flickinger* v. *Heck*, 187 Cal. 111, 113 [200 Pac. 1045].) Such an executory contract can be enforced by specific performance. (*Smith* v. *Bangham*, 156 Cal. 359 [28 L. R. A. (N. S.) 522, 104 Pac. 689]; *Bird* v. *Potter*, 146 Cal. 286 [79 Pac. 970].) ■ Giving due consideration to all the terms of the contract and viewing it in the light of the circumstances under which it was executed, as shown by the evidence, it cannot be held that the parties intended to make time the essence thereof. Nowhere in the contract is there any provision that if the payments are not made on the dates specified the contract shall be null and void, nor that any rights of the vendee thereunder shall be forfeited. Nor is there any provision that the vendor may claim a forfeiture if the terms or conditions of the contract are not complied with on the dates specified. ■ It is not necessary, in order to make time of the essence of a contract, that it should be so declared in exact language or in so many words, but the intent to make it so must be clearly, unequivocally and unmistakably shown or expressed in the document. ■ Merely prescribing the day on or before which a payment must be made or an act performed does not render time essential with respect to such payment or such act when time is not otherwise made the essence of the contract. (*Miller* v. *Cox*, 96 Cal. 339 [31 Pac. 161].) But

appellants contend that the clause in the final paragraph of the contract shows definitely that it was the intention of the parties to make time of the essence of the contract. This clause reads as follows: "But said Richard C. Cushing hereby quitclaims any right, title or interest of any nature whatsoever that he may obtain to any of said property under the terms of this agreement in case of his failure to fulfil the terms and conditions thereof." The meaning of this phrase is not plain. All reasonable inferences that may be drawn from the evidence must be construed by us, if reasonably possible, so that they will tend to support the judgment. The clause which we have quoted might reasonably mean that Cushing will quitclaim the property in case of his failure in the performance of the conditions of the contract, and is not the equivalent of the provision in the contract before the court in *Bennett* v. *Hyde*, 92 Cal. 131 [28 Pac. 104, 105], as counsel contends, and which reads as follows: "In the event the parties of the second part fail to comply with any one of the agreements herein specified, and at the time specified, then this contract shall immediately become void, and the party of the first part shall be released from all obligation at law or in equity to convey said land; and the parties of the second part agree that they will, upon failure by them to comply with any one of their agreements herein specified at the time specified, forfeit all claim to said land, and will deliver up said land peaceably, and without process of law, to the party of the first part. The party of the first part, upon receiving the several payments herein specified at the time specified, agrees," etc.

It is plain from this language that the parties in the Bennett case intended that a forfeiture should follow, *ipso facto*, upon failure to perform at the specified time. The language used by the parties in the instant case cannot be given any such meaning. ██ It follows from this conclusion that time was not of the essence of the contract under consideration in this case and that the failure of Cushing to make the payment of the $790 on February 1, 1928, did not result in a forfeiture of his contract. He still had a reasonable time within which to pay, or tender payment of, the amount due, with compensation for the delay (*Potter* v. *Pigg.* 35 Cal. App. 707 [170 Pac. 1066]; *Carr* v.

*Howell,* 154 Cal. 372 [97 Pac. 885]), and tender of such payment and compensation was made not later than February 6, 1928. In fact, payment of compensation was offered and refused on February 5th and payment of the $790 was offered to and refused by the appellants on February 6th, 1928. ■ The delay in making such payment was caused by the illness of respondent, which incapacitated him from attending to business, and the court has found on sufficient evidence that such delay was excusable. We see no reason to disturb that finding.

■ 3. Appellants also contend that the court erred in finding appellants guilty of bad faith in their refusal to perform the contract. This finding was made upon conflicting evidence and therefore will not be disturbed by this court or commented upon by us further than to say that an examination of the record convinces us that the finding is amply supported by the evidence. The finding is important chiefly in view of section 3306 of the Civil Code, which provides as follows: "Section 3306. Breach of Agreement to Convey Real Property. The detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land."

■ The finding that the appellants acted in bad faith in refusing to perform their contract with respondent for the sale of the land in question, clearly brings this case within the provisions of the latter part of said section 3306 of the Civil Code, in the matter of estimating the damages and accordingly the trial court has found and added to the damages assessed in the case, the difference between $80,000, the price agreed to be paid, and $90,000, the value of the land to be conveyed, at the time appellants breached their contract. This was strictly in accord with the provisions of the code and the decisions of the Appellate and Supreme Courts. (*Clark* v. *Yocum,* 116 Cal. 515 [48 Pac. 498]; *Kaufman* v. *Bell,* 89 Cal. App. 610 [265 Pac. 317].)

4. After the close of the testimony and arguments of counsel on both sides and after the court had intimated, in delivering his opinion, that he would order judgment against the defendants, counsel for the defendants and the intervener, who was the wife of the defendant Adolph Levi, suddenly interrupted the court and addressed him as follows: ''If the court please, may we at this time withdraw the interpleader and ask for specific performance?'' ''In other words we ask for judgment in the alternative.'' ''Specific performance or damages.'' After an objection and protest against this procedure by counsel for the plaintiff, the court denied the request and concluded the statement of his opinion and decision by ordering judgment against the defendant for $11,000 and quieting title to the premises in the defendants and the intervener, against all claims of the plaintiff. The appellants assign as error the court's refusal to grant their request. The real estate in question was the community property of the defendant Adolph Levi and his wife, the intervener in this action. However, the intervener made no objection to having the title of the premises quieted in her, nor did she make or offer to sign any deed of her interest in the premises, either to the defendants or to the plaintiff in this action. Consequently there was no reason for the court to grant this request. Her withdrawal, under the circumstances, would have given the court no greater power to order specific performance of this contract, which she had not signed, than if she remained a party to the action, and in neither case would the court have such power. Therefore the court committed no error in refusing the intervener's request to withdraw. But, in any event, the request came too late. The case had been tried and submitted upon one theory and state of facts, and the court will not permit it to be suddenly resubmitted by one of the parties on an entirely different theory for the purposes of the decision, against the objection of the other party. We have carefully examined this and all other assignments of error, but find no error in the record which requires a reversal of this case. Consequently, the judgment appealed from is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 21, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 23, 1931.