Filed 9/20/23  Duran v. County of Los Angeles CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| JESS A. DURAN, JR., | B316064 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STCV08815) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Jess A. Duran, Jr., in pro. per., for Plaintiff and Appellant.

Gutierrez, Preciado & House and Calvin House, for Defendant and Respondent.

————————————————

Plaintiff and appellant Jess A. Duran appeals from the trial court's judgment enforcing a settlement agreement between Duran and defendant and respondent County of Los Angeles (County). The primary question before the trial court was whether the County's delay in performing one of its obligations under the agreement—recommending the settlement to County authorities for approval—was a material breach of the agreement, justifying Duran's rescission and therefore terminating the agreement. The trial court found no material breach and granted the County's motion to enforce the settlement. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Settlement Agreement*

Duran is a former social worker for the Los Angeles County Department of Children and Family Services (DCFS). In 2018, Duran filed a lawsuit against the County. The parties attended mediation and reached a settlement in August 2020. Under the terms of their agreement, the County agreed to pay $246,500 to settle all of Duran's claims, contingent on approval by County authorities, including the Board of Supervisors (the Board). The parties stipulated that the agreement would be deemed "null and void in the event the County's approval authorities deny such approval." The County had five months from the date of execution, until January 25, 2021, to recommend the settlement to the Board for approval. The agreement allowed the parties to "execute an addendum . . . to extend the time for presentation to the Board of Supervisors" in case of emergency. The parties further agreed that Duran would be placed on paid administrative leave until the Board approved the agreement

2

and, upon notice of approval, Duran would resign from his employment with the County.

### *The County's Delayed Performance and Duran's Purported Rescission*

The County did not recommend the settlement to the Board by January 25, 2021. On February 1, 2021, the County payroll department emailed Duran and his supervisors to ask if his period of administrative pay had ended. Over three weeks later, on February 25, 2021, Duran replied, stating he would be returning to work the following month. Duran purported to rescind the settlement agreement by email the same day on the basis that the County's failure to present the settlement to the Board for approval by January 25th rendered the agreement "null and void."

On February 26, 2021, the Human Resources Administrator for DCFS sent Duran a letter reassigning him "home with pay," also known as an "ordered absence." Duran was instructed to remain available for work assignments during a regular work schedule but he was prohibited from entering any DCFS office or contacting DCFS employees about the reassignment.

On March 15, 2021, the County presented the settlement agreement to the Claims Board, which approved the agreement and forwarded it to the Board of Supervisors the same day. The County also presented the agreement "to a cluster meeting of Board deputies on March 17, 2021." On April 6, 2021, the Board of Supervisors approved the agreement. The County then transferred the settlement payment to Duran's attorney, who deposited the money in a trust account pending the resolution of

3

the parties' dispute over the enforcement of the settlement agreement.

***The Motion to Enforce the Settlement Agreement***

By early May 2021, Duran had not resigned his position despite the Board's approval of the settlement agreement. The County moved to enforce the settlement agreement. The County contended Duran's rescission due to the County's delay did not excuse him from his obligation to resign because the timing of the County's performance was not material to the settlement agreement.

Duran's opposition to the motion explained that he agreed to the five-month period for performance because it would afford him time to look for a job with "an employer that would help [him] complete [his] 'supervised clinical hours' in psychotherapy," and that also participated in a student loan forgiveness program. He argued the County's delay deprived him of these exact benefits: he had to forgo a new employment opportunity because he could not resign from his County position until the agreement was approved; he could not complete the supervised clinical hours necessary for licensure by the Board of Behavioral Sciences while on "ordered absence;" and he was at risk of losing eligibility for Public Service Loan Forgiveness if he did not find a position with a qualified employer "soon."

The trial court granted the County's motion. It found the approximately two-month delay from January 25, 2021 to the County's presentation of the settlement agreement to the Board in mid-March was insignificant and not a material breach.

Duran, now self-represented, timely filed a motion for reconsideration, alleging that his counsel had "omitted several crucial facts" in the opposition to the motion to enforce the

4

settlement. Duran argued the County's untimely performance was a material breach of the agreement and his repudiation was therefore justified under Civil Code section 1689.[1] Duran also attached the employment offer he claimed he passed up due to the County's delinquency, and additional emails he sent to the County notifying it of his rescission in March 2021.

In late July 2021, the trial court entered judgment granting the motion to enforce the settlement and awarding the County $600 in attorney fees. The court denied Duran's motion for reconsideration in September 2021, finding that Duran did not present new facts warranting reconsideration. The trial court also concluded the additional information in the motion did not alter its previous ruling that time was not of the essence and the two-month delay was not material. Duran timely appealed.

**DISCUSSION**

I. **Substantial Evidence Supports the Trial Court Order Granting the Motion to Enforce the Settlement Agreement**

   A. **Standard of review**

Code of Civil Procedure section 664.6, subdivision (a) provides, in relevant part: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." The Legislature enacted Code of Civil Procedure section 664.6 to establish "a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of

---

[1] All further undesignated statutory references are to the Civil Code.

5

misunderstandings are met." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 585.)

A trial court's findings of fact on a motion brought pursuant to Code of Civil Procedure section 664.6 "are subject to limited appellate review and will not be disturbed if supported by substantial evidence." (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 790 (*Machado*).) Substantial evidence review " ' begins and ends with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' [Citations.]" (*People v. Overstock.Com, Inc.* (2017) 12 Cal.App.5th 1064, 1079, italics omitted.) "[W]e must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630.) " 'Where different inferences may reasonably be drawn from undisputed evidence, the conclusion of the … trial judge must be accepted by the appellate court.' [Citation.]." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 633.) We review the trial court's conclusions on questions of law de novo. (*Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1166.)

Several principles of appellate review also guide our analysis. "[A] trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) "We presume the trial court knew and properly applied the law absent evidence to the contrary." (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103.)

6

## B.   Contract rescission: Applicable legal principles

Rescission is a " 'retroactive termination' of a contract . . . ." (*Nmsbpcsldhb v. County of Fresno* (2007) 152 Cal.App.4th 954, 959 (*Nmsbpcsldhb*).)  "The consequence of rescission is not only the termination of further liability, but also the restoration of the parties to their former positions by requiring each to return whatever consideration has been received."  (*Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 184.)

A party may rescind only under the specific circumstances set forth in section 1689.  (*Nmsbpcsldhb*, *supra*, 152 Cal.App.4th at p. 959.)  Section 1689 subdivision (b)(2) and (b)(4) permit a party to unilaterally rescind a contract "[i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds," or "[i]f the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause."

"Case law has uniformly held that a failure of consideration must be 'material,' or go to the 'essence' of the contract before rescission is appropriate."  (*Wyler v. Feuer* (1978) 85 Cal.App.3d 392, 403–404 (*Wyler*); *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277 (*Brown*) [a party may be discharged from its duty to perform if the other party's failure to perform constitutes a material breach].)  "[T]rivial or inappreciable" breaches will not justify rescission.  (*Medico-Dental Bldg. Co. v. Horton & Converse* (1942) 21 Cal.2d 411, 433; *Wyler*, at pp. 403–404 [affirming a jury instruction that required a claim of rescission under section 1689, subdivision (b)(2) to arise from a material failure of consideration].)  "[A] finding that a party failed to abide by certain settlement terms does not necessarily support a finding the party materially breached the parties' agreement.  [Citation.]

7

Only a material breach . . . would discharge [other parties] from their duties to perform under the agreement." (*Machado*, *supra*, 39 Cal.App.5th at pp. 796–797; *Taliaferro v. Davis* (1963) 216 Cal.App.2d 398, 412 ["The right of the injured to claim release from obligations and thus elect to terminate the contract depends . . . upon the 'gravity of the breach.' [Citation.]"].)

Whether a breach of a contract is material depends on "the importance or seriousness" of the breach and "the probability of the injured party getting substantial performance." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 852, pp. 938–940.) "[T]he question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact." (*Brown*, *supra*, 192 Cal.App.4th at p. 277.)

### C. Substantial evidence supported the trial court's finding that the County's breach was not material

The trial court concluded Duran was not entitled to rescind the settlement agreement because there was no material breach by the County. Specifically, the court found the timing of the County's recommendation of the settlement agreement to the Board for approval was not "of the essence" to the agreement such that the County's delayed performance constituted a material breach. Substantial evidence supported this conclusion.

"Delay in performance is a material failure only if *time is of the essence*, i.e., if prompt performance is, by the express language of the contract or by its very nature, a vital matter." (*Johnson v. Alexander* (1976) 63 Cal.App.3d 806, 813; *Gold Mining & Water Co. v. Swinerton* (1943) 23 Cal.2d 19, 27 (*Swinerton*) [failure to timely perform constituted material breach where time was of the essence].) "The general rule of

8

equity is that time is not of the essence of the contract, unless it clearly appear[s] from the terms of the contract, in the light of all the circumstances, that such was the intention of the parties." (*Henck v. Lake Hemet Water Co*. (1937) 9 Cal.2d 136, 143 (*Henck*).)  The intent to make time "of the essence" must be "clearly, unequivocally and unmistakably shown or expressed in the document."  (*Cushing v. Levi* (1931) 117 Cal.App. 94, 104 (*Cushing*).)

The settlement agreement between Duran and the County does not include an express time-is-of-the-essence clause.  The parties memorialized that the County would recommend the agreement for Board approval within five months of the date of execution.  However, the existence of a date certain for performance is not alone sufficient to make the timing of that performance a material term of a contract.  For instance, in *Henck*, *supra*, 9 Cal.2d 136, the court held a date certain to remit payment for water rights in a contract was "a means to insure prompt payment" and not a material term of the contract.  (*Id*. at p. 144.)  Similarly, in *Cushing*, *supra*, 117 Cal.App. 94, time was not essential to a contract which merely prescribed the day on or before which payment was to be made.  (*Id*. at p. 104.)

Courts instead look for other indications that the parties intended a date for performance to be essential to the contract.  For example, in *Swinerton*, *supra*, 23 Cal.2d 19, the time of performance was found essential to a lease agreement that required removal of minerals from a property because the contract expressly stated that the parties sought to take advantage of the "1937–1938 water and mining season."  (*Id*. at pp. 26–27.)  Similarly, in *Leiter v. Eltinge* (1966) 246 Cal.App.2d 306, the court found time was of the essence to an escrow

9

agreement where the defaulting party knew the non-breaching party needed the funds for another time-sensitive purchase agreement and had expressly agreed to payment by a date certain for that reason. (*Id*. at pp. 312–313, 316.) Conversely, the court in *Katemis v. Westerlind* (1953) 120 Cal.App.2d 537, held the timing of an escrow deposit was not material to an escrow agreement where there was no "clear[-]cut language manifesting an intent to make time of the essence" and the document "patently [did] not expressly declare such to be the intention of the parties, nor does it do so with any degree of reasonable certainty." (*Id*. at pp. 543–544.) A delayed escrow payment was therefore not a material breach.

Here, the settlement agreement does not contain any "clear-cut language" that manifests the intent of the County or Duran to elevate the January 25, 2021 deadline to a fundamental requirement of the contract. The settlement agreement does not state that the five-month period was intended to preserve Duran's future employment opportunities, ability to accrue clinical hours, or student loan forgiveness eligibility. The parties explicitly identified some elements of the agreement as material; they specified in the agreement that violations of the confidentiality provisions would constitute a material breach. The parties did not include similar language concerning the timing of the County's performance. Additionally, the parties specifically noted that a denial of approval by County authorities was the one circumstance that would render the agreement null and void. The clauses delineating the timing of the County's performance do not express any intent that delayed performance would similarly invalidate the agreement, or otherwise indicate the County's rights under the contract would be forfeited "if the

10

terms or conditions of the contract are not complied with on the dates specified." (*Cushing*, *supra*, 117 Cal.App. 94 at p. 104.)

Duran asserts the materiality of timely performance was established during settlement negotiations, during which he informed the County about the importance of the timing to his clinical hours and loan forgiveness. We note, however, that the County denies that Duran informed its representatives about the potential consequences of untimely performance during negotiations and Duran failed to produce evidence to substantiate this claim. The record contains two declarations from Duran, both of which attest only to his subjective understanding that five months afforded him sufficient time to look for new employment, not that this reason or any other was communicated to the County. Based on the evidence before it, the trial court properly concluded the parties did not make the time of performance a material term of the agreement.

Substantial evidence further supported the trial court's determination that the two-month delay in the County's performance was not significant enough to materially breach the agreement. When time is not of the essence, delayed performance may still fulfill the breaching party's obligations if it occurs within a reasonable time. (*Becker v. Becker* (1950) 36 Cal.2d 324, 326; *Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C.* (2019) 41 Cal.App.5th 357, 364 (*Magic Carpet Ride*) [applying substantial performance doctrine when a party performed but missed a deadline].)

The trial court could reasonably conclude that the County, by completing its performance within two months, fulfilled its obligations in a reasonable time. The County placed Duran on paid administrative leave after execution of the settlement

11

agreement, as required by its terms, and extended Duran's employment through an "ordered absence" to account for the additional time it needed to complete its obligations. The County also timely paid the full amount owed under the settlement agreement after it was approved, even though Duran had yet to resign. The County remedied the defects in its performance and Duran received what the contract calls for—compensation for dismissal of his claims against the County.

### D. Application of the Restatement factors leads to the same result

Duran argues the trial court's decision was inconsistent with the Restatement (Second) of Contracts factors that determine whether a failure to perform is material. We disagree.

The Restatement factors include: "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; [¶] (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; [¶] (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; [¶] (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and] [¶] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." (Rest.2d Contracts, § 241.) The factor test is flexible and intended to be applied "in such a way as to further the purpose of securing for each party his expectation of an exchange of performances." (Rest.2d Contracts, § 241, com. a.)

The first two factors concern whether Duran received the benefit of the bargain struck by the settlement agreement. The

benefit Duran reasonably expected from settling with the County was compensation for dismissal of his claims, which the County remitted to his attorney in April 2021. The parties' intent in entering the agreement was to resolve the underlying lawsuit in exchange for monetary compensation, not to safeguard Duran's future employment prospects or professional obligations. Duran's alleged injuries resulting from the County's untimely performance are unrelated to the benefits contemplated by the settlement agreement.

As to the third factor, a finding of material breach would cause the County to forfeit the resolution of Duran's underlying claims against it, incur expenses related to ongoing litigation, and risk potentially losing at trial. The magnitude of the County's forfeiture strongly cuts against a finding of material breach due to delay, particularly where the settlement agreement is silent as to the materiality of timely performance and Duran has received what he is due under the contract. (*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1051 [" '[The] law [is] slow to impute' " materiality where the contract is silent and " 'the significance of the default is grievously out of proportion to the oppression of the forfeiture' "].)

With respect to the fourth factor, Duran argues it was not likely that the County would cure its failure because County officials gave him no indication before the date of his purported rescission that they intended to perform, and they subsequently failed to provide assurances about the County's intent to cure. Yet, the record reflects the County's willingness to perform. Before missing the submission deadline, the County had already partially performed by placing Duran on paid administrative leave pending Board approval. One day after Duran emailed the

13

County to rescind, the County reassigned Duran to work from home with pay "pending the outcome of an administrative review." It is reasonable to infer that the County imposed this "ordered absence" because it intended to cure and sought to ensure Duran continued to be paid in the interim.

Events occurring after breach are relevant to the likelihood of cure. A party has an opportunity to cure its failure where time is not of the essence. (Rest.2d Contracts, § 242, com. a.) The County took advantage of this opportunity. It belatedly recommended the settlement agreement to the Board, and, upon approval, deposited the settlement funds with Duran's attorney. Because time was not of the essence, the trial court could reasonably conclude that this factor weighed against a finding of material breach. (*Magic Carpet Ride*, *supra*, 41 Cal.App.5th at pp. 365–366 [delayed performance constituted cure under Restatement test].)

Finally, Duran did not demonstrate bad faith or unfair dealing on behalf of the County. The County placed Duran on paid administrative leave and a paid "ordered absence" to account for the entirety of the period he awaited the County's recommendation to the Board. Duran himself states that the County's untimely action was a result of "clerical type error." Substantial evidence supports the conclusion that the County did not act in bad faith.

The trial court could reasonably conclude that the County did not materially breach the settlement agreement under the Restatement factors and Duran was not entitled to rescind. We

14

affirm the trial court's order granting the motion to enforce the settlement.[2]

## II. The Trial Court Did Not Abuse its Discretion by Awarding Attorney Fees to the County

Duran also challenges the trial court's award of $600 in attorney fees to the County. We review attorney fee awards for abuse of discretion. (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488.) "Under this standard, we do not disturb the award unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*Stratton*, *supra*, 30 Cal.App.5th at p. 915.)

Section 1717, subdivision (a) entitles the prevailing party in a contract action to reasonable attorney fees when the contract specifically provides for fees. The parties' agreement included an attorney fee provision. When, as here, a party obtains a " ' "simple, unqualified win" ' " on all contract claims in an action and the contract provides for fees, the prevailing party "is

---

[2] Duran also contends the trial court erred in denying his motion for reconsideration. We disagree. The trial court had no jurisdiction to consider Duran's motion for reconsideration after the court entered judgment granting the motion to enforce the settlement. (*Safeco Ins. Co. v. Architectural Facades Unlimited, Inc.* (2005) 134 Cal.App.4th 1477, 1482; *Nave v. Taggart* (1995) 34 Cal.App.4th 1173, 1176–1178 [entry of subsequent judgment is construed as "an implied denial" of a pending motion for reconsideration].) Further, even if the court had jurisdiction, we would conclude the court did not abuse its discretion in denying the motion because Duran failed to present new facts warranting reconsideration. (*Stratton v. Beck* (2018) 30 Cal.App.5th 901, 916 (*Stratton*) [affirming denial of reconsideration motion where the movant "did not offer any new facts or law in support of the motion for reconsideration"].)

entitled to attorney fees as a matter of right, eliminating the trial court's discretion to deny fees under section 1717." (*Silver Creek, LLC v. BlackRock Realty Advisors, Inc.* (2009) 173 Cal.App.4th 1533, 1538, citing *Hsu v. Abbara* (1995) 9 Cal.4th 863, 875–876.)

There is no basis for this court to reverse an attorney fee award mandated by the Civil Code. The trial court's order awarding attorney fees is affirmed.

### DISPOSITION

The trial court judgment is affirmed. The County shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

16