[Civ. No. 4757. Fourth Dist. Jan. 27, 1954.]

HERMAN BRUGGEMAN et al., Respondents, v. GEORGE SOKOL et al., Appellants.

Buchalter, Nemer & Fields for Appellants.

Milford W. Dahl for Respondents.

MUSSELL, J.—Defendants and cross-complainants appeal from a judgment and decree quieting title in plaintiffs as joint tenants of certain real property in Orange County and declaring that defendants and cross-complainants have no right, title, interest, claim or estate therein. Defendants, in their answer to the complaint to quiet title, admitted that the record title was in plaintiffs but claimed title to the property by reason of the terms of an escrow agreement and in their cross-complaint sought a decree providing for specific performance of the contract. The trial court concluded that the agreement was unenforceable, quieted plaintiffs' title to the property, and defendants have appealed from the judgment.

On June 19, 1950, plaintiffs and defendant George Sokol signed escrow instructions which provided in part as follows: "The total consideration of this transaction is $75,000. The first money derived from the sale of the homes to be built on the subject property is to be paid to the seller and continuing as each sale of the constructed homes is completed until the entire amount of $75,000 has been paid . . . which you are instructed to use when, after recording the necessary instruments, you are able to procure a . . . policy of title insurance . . .on the following described property situated in the county of Orange, State of California: Property located at the Northeast corner of 9th & Garden Grove Blvd., in the City of Garden Grove, containing approximately 5 acres. . . . 20 acres more or less located 675 feet east of 9th Street and running east along Garden Grove Blvd. 640 feet more or less. Legal to be inserted and made a part hereof. . . . Showing title vested in Garden Homes, Inc. (A Calif. Corporation being organized). . . . The successful consummation of this escrow is contingent upon the following:

"1. F.H.A. & V.A. approval for construction loans to file.

"2. Interim Finance to be obtained by the buyers. Buyer will give you written notice when these approvals have been obtained.

"The second trust deed to file concurrently with the construction loans is to be as follows: $75,000.00, payable the net proceeds from the sale of each house on subject property, interest at the rate of 5% per annum from 90 days from

the recording date of the deed to this property. This deed of trust is to be in favor of Herman Bruggeman and Florence Bruggeman, husband and wife as joint tenants. Beneficiary agrees to issue Partial Reconveyances upon the request of trustor.

"It is understood and agreed that this is to be a 90 days escrow; however, in the event the buyers need additional time to obtain the necessary approvals, the time element is automatically waived and the buyers may continue to obtain the approvals without additional approval of the sellers."

These instructions were signed "Garden Homes, Inc. (being organized) George Sokol" and by the plaintiffs.

On September 6, 1950, these instructions were modified by a writing signed by "Sunshine Terrace Homes, being inc. by M. C. Sokol" and by plaintiffs. It was agreed therein that a part of the property referred to in the original instructions (approximately 5 acres) was to be conveyed to Garden Homes, Inc. for a consideration of $17,040, "to be in form of a note secured by a second deed of trust on said property (the same terms and conditions as set out in the original escrow instructions)." The instrument then provided as follows: "You are to hold this escrow open for the sale of the balance of the property involved. Instructions will be given you at a later date re: price and description."

On September 11, 1950, plaintiffs and Sunshine Terrace Homes, Inc. executed a further amendment to the escrow instructions providing therein that the title to the property described in the amendment of September 6, 1950, would be taken in the name of Sunshine Terrace Homes, Inc.; that certain lots described therein would be covered by a second deed of trust and that a partial reconveyance for each lot would be issued upon the payment of $950 for each lot so released.

On September 14, 1950, Sunshine Terrace Homes, Inc. advised plaintiffs by letter that they were desirous of proceeding with the development of plaintiffs' property in smaller groups than previously anticipated and that they would pay an additional $2,000 on or before one year after completion of the first group of houses should they for some unforeseen reason not be able to proceed with the entire development.

On March 21, 1951, plaintiffs advised the escrow agency that all escrow instructions pertaining to more than five acres (as described in the amendment dated September 6,

1950) were canceled and the sale involved in the escrow was limited to five acres.

On March 30, 1951, the original escrow instructions were again modified by a written agreement which provided in part that the payment of the sum of $17,040 provided for in the amendment of September 6, 1950, was to be paid in the following manner: The sum of $5,250 to be paid for Lots 1 to 6, inclusive; the sum of $1,040 for Lot 7, and $950 each for Lots 8 to 15, inclusive, and Lots 35, 36 and 37 in tract numbered 1466. This tract embraced the 5 acres described in the amendment of September 6, 1950, and 5 acres purchased by one Bears. Plaintiffs' remaining property was an undeveloped area. Since the payments set forth in the March 30th modification did not total the sum of $17,040, a further modification was executed on April 2, 1951, in which it was agreed that there would be one note in the sum of $15,700 and another in the sum of $1,340, secured by second deeds of trust, with interest at 5 per cent from December 28, 1950. The deeds of trust were to be signed concurrently ''with the first trust deed or building loan being arranged through F.H.A. commitments.''

The March 30, 1951, amendment also provided that the escrow agency should:

''Hold for the seller, Herman Bruggeman and Luella Bruggeman, the sum of $2,000.00 which you are to pay to said seller, in addition to the price of $3,000.00 per acre, in event that the purchaser does not proceed with the entire development as originally contemplated in escrow No. 968 within one year from this date. The above transaction is to be completed in the office of Stephen & Stephen, 108 West Broadway, Anaheim, Calif. on or before March 30th, 1952.''

On March 31, 1951, plaintiffs notified the escrow agency that all previous instructions in the escrow were canceled provided the amendment to the instructions dated March 30, 1951, was signed by all parties involved.

The houses built on tract No. 1466 were completed in the latter part of 1952 and sold and the said sum of $17,040, with interest, was paid to plaintiffs. About ten months after the completion of the houses the F.H.A. informed Sokol that the area had proved itself and that construction could be continued in that area.

Defendant Sokol testified that he had plans drawn for the houses he was considering building on the 19 acres of

undeveloped property but that Mr. Bruggeman refused to let him go on the property to have it surveyed and graded and stated that "He didn't want to go ahead with those 19 acres"; that Bruggeman refused to let him go on the property after March or April of 1952.

On March 25, 1952, the escrow agent advised plaintiffs by letter that he had received a letter from Sokol instructing them to proceed with previous arrangements to purchase the balance of plaintiffs' property. The agent then said "We believe it would be better that you all call at our office together before we proceed with the transaction," and in a letter to plaintiffs, dated April 2, 1952, the escrow agent expressed his hope that the parties could get together, iron out their differences and enable the agency to proceed and close the escrow. No deeds or instruments of conveyance were deposited in the escrow by plaintiffs and no documents of indebtedness were deposited therein by Sokol in connection with the undeveloped acreage.

Sunshine Terrace Homes, a corporation, was named as defendant in the amended complaint herein and after filing its answer, stipulated that it could be withdrawn and a default judgment entered against the corporation. It was also stipulated that the defendant Garden Homes, Inc. was never incorporated and that it is one and the same as "Sokol."

Defendants first contend that the terms of the written escrow instructions of June 19, 1950, together with the subsequent amendments and modifications thereto are definite and certain and that the agreement between the parties should have been specifically enforced. We cannot agree with this contention.

In *Wood* v. *Anderson*, 199 Cal. 440, 444 [249 P. 862], it was held that the rule is well established that a contract, particularly one for the conveyance of real property, will not be enforced by a court of equity unless it contains all of the material terms and also expresses each in a sufficiently definite manner and that since the contract there under consideration was indefinite as to the land conveyed, the time, place and conditions of payment of the purchase price, and as to the amount of the purchase price itself, the question was one of "such uncertainty and indefiniteness in appellant's testimony concerning the terms and conditions of the alleged contract as would require the court to indulge in a mere conjecture and speculation in order to arrive at the intent of the parties."

In *Mills* v. *Skaggs*, 64 Cal.App.2d 656, 658, 659 [149 P.2d 204], it was held that:

"It is well settled that an agreement that is incomplete, uncertain or indefinite in its material terms will not be specifically enforced in equity and 'that the degree of certainty required in an equity action is much greater than that required in an action at law.' . . . This general principle has been applied in denying specific enforcement of agreements which were incomplete, indefinite or uncertain with respect to the terms of payment of deferred balances or the terms of the incumbrances representing such deferred balances." (Citing cases.)

Civil Code, section 3390, subdivision 6, provides that an agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable, cannot be specifically enforced. And in *Roberts* v. *Lebrain*, 113 Cal.App.2d 712, 716 [248 P.2d 810], the rule is stated that a contract for the sale of real property will not be specifically enforced unless it not only contains all the material terms, but also expresses each in a reasonably definite manner; that the burden was upon the appellant as the cross-complainant to prove such a contract; that "the proofs of the contract should be clear" under such circumstances and that an appellate court must view the evidence most favorable to the successful party in the trial court.

 In the instant case the escrow instructions are indefinite and uncertain as to the time, place and conditions of payment of the purchase price. The total consideration of the transaction is stated as the sum of $75,000. However, 5. acres were sold for the sum of $17,040. The purchase and selling price of the remaining property and the time and manner of payment thereof was never determined. The consummation of the escrow was made "contingent upon F.H.A. and V.A. approval for construction loans to file." The amounts of these loans were never determined and apparently they were to be secured by first trust deeds on the property. However, the form of the trust deeds or the amounts to be secured thereby were never agreed upon by the parties. The escrow was further contingent upon "interim finance to be obtained by the buyers." The terms and conditions of such "interim finance" are not set forth and were to be determined by the buyers at some future indefinite time. Plaintiffs were to be given a second trust deed in the sum of $75,000

"payable the net proceeds from the sale of each house on subject property," but the times at which such payments, if any, are to commence or are to be made thereafter is not stated. While interest at the rate of 5 per cent per annum is mentioned, the time or times of payment thereof were never agreed upon nor was the amount on which it was to be computed ascertained. Although the escrow instructions were signed by defendant Sokol, they were signed by him as a representative of Garden Homes Inc. (being organized). "Garden Homes" was never incorporated and the title to the property could not be shown to be vested as required by the instructions. The property involved was insufficiently described in the escrow instructions and the "legal" was to be inserted and made a part thereof. Pursuant to subsequent modifications of the agreement, part of the property was sold to Sunshine Homes Inc. and the description of the remaining property or parts thereof which were to be developed and sold was left to future agreement of the parties.

The record herein shows that plaintiffs and defendant Sokol endeavored to enter into an agreement whereby plaintiffs would sell and Sokol would buy the entire acreage owned by plaintiffs. However, the whole transaction was subject to approval of F.H.A. and V.A. construction loans and "interim" financing to be obtained by Sokol. The parties, by the September 6, 1951, amendment to the instructions and subsequent amendments were able to agree upon the terms and conditions of the sale of 5 acres only. The September 6th amendment provided that the escrow would be held open for the sale of the balance of the property and instructions were to be given at a later date with respect to the price and description of the property to be sold. No further amendments to the instructions were made by the parties with respect to the terms of sale of the balance of the property and on March 21, 1951, plaintiffs advised the escrow agency that all escrow instructions pertaining to more than the 5 acres described in the September 6, 1950, amendment were canceled.

The evidence was sufficient to sustain the finding of the trial court "That the escrow instructions dated June 19, 1950, and the amendments thereto, all of which form the alleged agreement in question, are incomplete, indefinite and uncertain, particularly with respect to the terms of payment and the terms of any and all encumbrances to represent the payment, so as to render the same unenforceable." Under the rules stated in the cases cited herein, the trial court was

justified in denying specific performance. Defendant attacks other findings of the trial court as not supported by the evidence. ██ However, since the quoted finding and the finding that plaintiffs are the owners in fee as joint tenants and are entitled to possession of the property involved are supported by the evidence, it is not material whether other findings objected to are sustained by the evidence or not. (*Sands v. Eagle Oil & Ref. Co.*, 83 Cal.App.2d 312, 321 [188 P.2d 782].)

Appellants, in support of the contention that the agreement between the parties should be specifically enforced, cite *Carr* v. *Howell*, 154 Cal. 372 [97 P. 885] ; *Hansen* v. *Hevener*, 69 Cal.App. 337 [231 P. 361] ; *Janssen* v. *Davis*, 219 Cal. 783 [29 P.2d 196] ; *Upton* v. *Gould*, 64 Cal.App.2d 814 [149 P.2d 731] ; and *King* v. *Stanley*, 32 Cal.2d 585 [197 P.2d 321]. These cases are all distinguishable and are not in conflict with the conclusions reached herein.

In the *Carr* v. *Howell* case the contract definitely fixed the amounts of the respective notes, the rate of interest they were to bear, the time they were to run, and the rebate to be allowed for payment of mortgage taxes by the mortgagor. The court held that the fact that mortgages sometimes, or even usually, contain other terms and covenants than there prescribed did not render the contract uncertain. The elements of certainty found in the Carr case are not to be found in the instant case.

In the *Hansen* v. *Hevener* case it was contended that the agreement sought to be enforced was uncertain as to the time when the sum of $1,000 mentioned therein was payable and the court held that the payment was required on or before the close of the escrow since the agreement provided for such payment "when the papers are down." The amount of the purchase price was ascertainable from the agreement and the interest was payable "from the close of escrow," which was a sufficient statement as to the time of payment.

In the *Janssen* v. *Davis* case plaintiff was a seller who sought specific performance by the buyer of an oral agreement which had been fully performed on the part of the seller. Specific performance was granted by the trial court but the judgment was reversed upon grounds other than the alleged uncertainty or indefiniteness of the agreement. The situation in that case was so unusual as to cause the Supreme Court to express regret that a reversal was required as the case was

one "clearly calling for the relief granted." (See *Mills* v. *Skaggs, supra,* 659.)

Specific performance was held to be proper in the *Upton* v. *Gould* case where the times and terms of payment and the amount of the purchase price were clearly set forth, a factual situation not present in the instant case. In the *King* v. *Stanley* case the rule is stated that:

"Equity does not require that all the terms and conditions of the proposed agreement be set forth in the contract. The usual and reasonable conditions of such a contract are, in the contemplation of the parties, a part of their agreement. In the absence of express conditions, custom determines incidental matters relating to the opening of an escrow, furnishing deeds, title insurance policies, prorating of taxes, and the like. . . . The material factors to be ascertained from the written contract are the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred, describing it so it may be identified."

However, in the instant case the time and manner of payments and the amounts thereof are clearly indefinite, uncertain and not ascertainable from the escrow instructions involved.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.