[Civ. No. 21317.   First Dist., Div. One.   June 26, 1964.]

MAGNA DEVELOPMENT COMPANY, Plaintiff and Appellant, v. HATTIE BELLE REED et al., Defendants and Respondents.

David Freidenrich, Leonard Ware and Eleanor M. Kraft for Plaintiff and Appellant.

Wyckoff, Parker, Boyle & Pope and James A. Wyckoff for Defendants and Respondents.

MOLINARI, J.—This is an appeal by plaintiff from a summary judgment in favor of defendants. The question presented is whether the trial court was justified in granting the

motion of defendants for a summary judgment. The consideration of this question turns essentially upon whether a subordination clause in an agreement for the sale of real property is uncertain as a matter of law.

## The Record

Plaintiff's second amended complaint for specific performance alleges that on January 4, 1962, plaintiff and defendants entered into a written agreement wherein defendants promised to sell to plaintiff and plaintiff promised to purchase from defendants certain described real property. It is further alleged that the agreement provides that plaintiff will pay no money down but will execute its promissory note payable to defendants for the amount of the purchase price with interest thereon at the rate of 6 per cent per annum payable semiannually; that the note is due and payable at the end of five years from its date unless defendants desire to have the note run for an additional five-year period in which event the interest shall continue at the same rate and the principal thereof shall be payable in five equal annual installments during the five-year period; and that said note is secured by a deed of trust to said property in which plaintiff is the trustor and defendants are the beneficiaries. It is also alleged that the purchase price of the land is $27,125, and that the Division of Highways of the State of California recently acquired comparable property for about one-half of the purchase price described therein; that in addition to the purchase price, plaintiff agreed to pay interest to defendants on any unpaid balance at the rate of 6 per cent per annum; that the purchase price mentioned in the agreement is equal to the value of the real property and therefore it would not be inequitable to enforce the terms of the agreement. A further allegation recites that plaintiff has fully performed under the agreement but defendants have failed and refused to perform thereunder and so advised plaintiff in writing on February 2, 1962. Plaintiff prayed for specific performance of the agreement, or, in the alternative, for damages caused it by reason of defendants' alleged breach.

Defendants filed their answer wherein they admitted the execution of an agreement with plaintiff (a copy of which is attached thereto and incorporated by reference), and their failure and refusal to perform said agreement. The answer alleges that defendants advised plaintiff of such refusal by letter dated February 2, 1962. In other respects defendants'

answer generally denied the material allegations of the complaint.

Thereafter defendants moved for a summary judgment on the following grounds: (1) that the terms of the alleged contract sought to be specifically enforced are not sufficiently certain to make the precise act which is to be done clearly ascertainable; (2) that defendants have not received an adequate consideration for the contract; (3) that said contract is not, as to defendants, just and reasonable; and (4) that said action is without merit. In support of said motion defendants filed a declaration wherein each stated that she is one of the parties who signed the contract attached thereto marked "Exhibit A";[1] that this contract is the one referred to in plaintiff's second amended complaint; and that the facts stated are within her personal knowledge, and if sworn as a witness she can and will testify competently thereto.

Plaintiff filed a counteraffidavit, executed by Harry H. Hicks, Jr., the substance of which is as follows: that he is secretary-treasurer of plaintiff corporation; that as an officer of said and similar corporations engaged in land development and construction for the past 10 years, he was acquainted with the customs in the building industry, and particularly with respect to construction loans; that the practices and customs in the granting of construction loans, including the length of term of said loans and the interest rate are fairly standardized; that the amount of said loans is customarily 60 per cent of the value of the improvements to be erected, together with appraised value of the land upon which said improvements are to be placed; that the rate of interest is the prevailing rate in said locality at the time of making said loan and the length of the term of said loans customarily does not exceed five years; that the customs and practices in the making of said construction loans will be testified to at the time of trial.

The affidavit also avers that if the court believes that the subordination provision does, as a matter of law, make the contract uncertain, plaintiff is willing to delete this provision so that the deed of trust provided for therein will not contain a subordination clause; that said contract provides for no money down for the reason that defendants themselves did not wish to receive any down payment but desired as much interest as they could obtain; that the more money due on

---

[1] Said exhibit, however, was not in fact attached to said declaration.

the contract the larger the payments of interest would be; and for this reason alone no money was paid down to defendants; that defendants' contention that said contract is unreasonable cannot be determined at this stage of the proceedings on the unilateral assertion of defendants or as a matter of law.

The motion for summary judgment was thereupon submitted; and, pursuant to an order granting the same, a judgment in favor of defendants was signed and entered. On this appeal from said judgment plaintiff does not question the sufficiency of the moving affidavits, but asserts that the parties have raised issues which can be resolved only by presentation to, and a decision by, the trier of the facts.

It is apparent that defendants' motion seeks a determination that as a matter of law the subject agreement is invalid on the ground that it is uncertain; that the consideration therefore is inadequate; and that it is not, as to them, just and reasonable. The supporting affidavits tender no factual issues but purport to serve merely as a vehicle to bring before the court the agreement in question. They do not, however, include the subject contract as an exhibit but refer to the copy attached to plaintiff's second amended complaint. It is apparent, therefore, that the proper remedy for defendants was to move for a judgment on the pleadings since the court was merely called upon to determine the validity of the agreement as a matter of law from a consideration of the face of the pleadings. Accordingly, none of the basic principles controlling judicial action in granting or denying a summary judgment need to be restated here because we are not concerned with the sufficiency of the affidavits, but with the sufficiency of the second amended complaint to state a cause of action. ■ It is well established, however, that where no triable issues are presented, and the sole remaining question is one of law, that question may appropriately be determined on a motion for summary judgment. (*Wilson* v. *Wilson*, 54 Cal.2d 264, 269 [5 Cal.Rptr. 317, 352 P.2d 725]; *Goldstein* v. *Hoffman*, 213 Cal.App.2d 803, 811 [29 Cal.Rptr. 334]; *Enos* v. *Foster*, 155 Cal.App.2d 152, 157 [317 P.2d 670].)

It is apparent in the case at bench, from a reading of the trial court's "Memorandum Decision," that it considered the determination presented by the subject motion a question of law. It is there stated that the court "finds that the purported contract entered into is uncertain and unreasonable as

to sellers.''[2] We are relegated upon this review, therefore, to a determination of whether the trial court was justified in granting what is tantamount to a judgment on the pleadings. The provisions of the subject contract pertinent to our inquiry are set out in the footnote.[3]

## Is the Contract Uncertain?

*Yes.* The trial court predicated its determination of uncertainty essentially upon the subordination provision with respect to the deed of trust provided for in the contract, and concluded that ''The only consideration and obligation of buyer provided in the contract is a note secured by a Deed of Trust against the property sold and this obligation may be subordinated to a construction loan without any provision being made in the contract for the amount of the loan, its term or the interest rate to which sellers' Deed of Trust might become subject.''

The modern trend of the law is to favor the enforcement of contracts, to lean against their unenforceability because of uncertainty, and to carry out the intentions of the parties if this can feasibly be done. (*Burrow* v. *Timmsen,* 223 Cal. App.2d 283, 288 [35 Cal.Rptr. 668].) It is well established, however, that where a party seeks specific per-

---

[2] While such a memorandum may not be used to impeach or modify the judgment, it may be noted and may serve as a guide where the meaning of the judgment is unclear or to explain the process of reasoning by which the trial judge arrived at his findings. (*Mears* v. *Mears,* 180 Cal.App.2d 484, 504 [4 Cal.Rptr. 618]; *Oldis* v. *La Societe Francaise,* 130 Cal.App.2d 461, 474 [279 P.2d 184]; *Coakley* v. *Ajuria,* 209 Cal. 745, 749 [290 P. 33]; *Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740, 750-751 [47 P.2d 273].)

[3] The written contract provides in pertinent part as follows: ''Said note shall be secured by a Deed of Trust to the property hereinabove described in which Buyer will be the Trustor, Sellers the beneficiary, and a title company to be selected by Buyer, will be the Trustee. Said Deed of Trust will be in standard form and in addition will contain a subordination clause which will provide that Sellers, as beneficiary, will agree that said Deed of Trust may be subordinated to a Deed of Trust securing a construction and/or take-out loan thereon and shall also contain a release clause whereby any of the individual lots or any portion thereof hereinabove described may be released from the lien of the Deed of Trust upon payment of the purchase price, to-wit: Eight Hundred and Seventy-five ($875.00) Dollars per lot or the pro rata thereof if a portion of the lot is taken, or may likewise be released by the furnishing of substituted security by Trustor at not less than the equivalent value of the lot or lots or portion thereof being released, which said substituted security, however, shall be subject to Sellers approval.''

formance of a contract, the terms of the contract must be complete and certain in all particulars essential to its enforcement. (*Bonk* v. *Boyajian,* 128 Cal.App.2d 153, 155 [274 P.2d 948]; *Colorado Corp.. Ltd.* v. *Smith,* 121 Cal.App.2d 374, 376 [263 P.2d 79]; *Berven* v. *Miller,* 86 Cal.App.2d 39, 40 [194 P.2d 80]; Civ. Code, § 3390, subd. 5.) ▉ An agreement for the sale of real property will not be specifically enforced unless it not only contains all the material terms, but also expresses each in a reasonably definite manner. (*Roberts* v. *Lebrain,* 113 Cal.App.2d 712, 716 [348 P.2d 810]; *Bruggeman* v. *Sokol,* 122 Cal.App.2d 876, 881 [265 P.2d 575]; *Buckmaster* v. *Bertram,* 186 Cal. 673, 676 [200 P. 610].) These principles have been applied in denying specific performance of agreements which are incomplete, indefinite or uncertain with respect to the terms of payment of deferred balances or the terms of encumbrances representing such deferred balances. (*House* v. *Lala,* 180 Cal.App.2d 412, 418 [4 Cal.Rptr. 366]; *Mills* v. *Skaggs,* 64 Cal.App.2d 656, 658-659 [149 P.2d 204]; *Mariposa Commercial etc. Co.* v. *Peters,* 215 Cal. 134, 140 [8 P.2d 849]; *Buckmaster* v. *Bertram, supra,* p. 676; *Klein* v. *Markarian,* 175 Cal. 37, 40 [165 P. 3].) ▉ Neither law nor equity, however, requires that every term and condition of an agreement be set forth in the contract. (*King* v. *Stanley,* 32 Cal.2d 584, 588 [197 P.2d 321]; *Martin* v. *Baird,* 124 Cal.App.2d 598, 601 [269 P.2d 54].) ▉ The usual and reasonable terms found in similar contracts can be looked to, unexpressed provisions of the contract may be inferred from the writing, external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency if it does not alter or vary the terms of the agreement. (*California Lettuce Growers, Inc.* v. *Union Sugar Co.,* 45 Cal.2d 474, 481-485 [289 P.2d 785, 49 A.L.R. 2d 496]; *Martin* v. *Baird, supra,* at p. 601; *King* v. *Stanley, supra,* at p. 588.)

Turning to the subordination provision in the instant case we find that it provides essentially as follows: "Said Deed of Trust . . . will contain a subordination clause which will provide that Sellers . . . will agree that said Deed of Trust may be subordinated to a Deed of Trust securing a construction and/or take-out loan thereon. . . ." It is apparent that this provision does not state the amount of the construction loan which would be placed on the property, nor any of its terms, nor when it would become due, nor the rate of interest it would bear, nor the terms or conditions of the first deed of trust to secure such loan.

In *Gould* v. *Callan*, 127 Cal.App.2d 1 [273 P.2d 93], the contract contained the following provision: " 'The 2nd Trust Deed mentioned on page 1 hereof to provide for subordination on the following basis: In the event the trustor [plaintiff] should erect a building on subject property at a total building cost of not less than $75,000.00 or more than $300,000.00, then Beneficiary agrees to subordinate said Trust Deed to the lien of a first trust deed not to exceed 60% of the true building cost. In the event of such subordination then the payments on said Second Trust Deed loan to be $400.00 or more per month, including 5% interest.' " (P. 3.) The appellate court, noting that the subordination clause was silent as to the amount of interest, the length of time it is to run, and the terms of payment, held that the failure of the clause to state the amount of interest and the terms and conditions of payment of the obligation to be secured by the first deed of trust made the contract indefinite and uncertain, that these provisions were material and essential to a contract providing for a deed of trust as security for an obligation, and that their absence was fatal to the claim for specific performance.

Similarly, in *Roven* v. *Miller*, 168 Cal.App.2d 391 [335 P.2d 1035], a purchase option contract between the parties contained the following provision: " ' ' "This Deed of Trust will be subordinated to a First Deed of Trust to secure a construction loan which will be placed upon the property by the Trustor, or his successors and assigns, given to a recognized Savings and Loan Association or bank for the purpose of securing a loan to be used for the construction of residences and improvements on said property." . . .' " (Fn. 1, p. 394.) The reviewing court, observing that the subordination clause contained in the purchase option contract did not state the amount of the construction loan which would be placed on the property, nor any of its terms, nor when said construction loan would become due, nor the rate of interest that it would bear, nor the terms or conditions of the first deed of trust to secure the construction loan, held that these provisions are material and essential to a contract providing for a deed of trust as security for an obligation and their absence justified the trial court in denying specific performance of the contract.

In *Kessler* v. *Sapp*, 169 Cal.App.2d 818 [338 P.2d 34], plaintiffs agreed in writing to purchase from defendants a parcel of unimproved property for subdivision purposes. A

special provision contained the following clause: " 'The Beneficiary on behalf of his ... heirs, administrators and assigns hereby agree ... that during the life of said Deed of Trust the Trustors ... may obtain a loan from a Bank, Insurance Company, Savings and Loan Association or Mortgage Company, securing a note for construction and/or permanent financing to be secured by a deed of trust which will be and remain at all times a lien on the property herein described. ... The Seller agrees to subordinate the Deed of Trust which will become a second deed of trust to a first trust deed to be filed concurrently ... and said first trust deed not to exceed in the amount equal to $6.50 per square foot exclusive of garages, stairways and porches.' " (Fn. 1, pp. 820-821.) The reviewing court stated that only one term of the contemplated deed of trust was set out, namely, the $6.50 per square foot proviso. Noting that the rate of interest, the amount of monthly payments and the period of the debt were left to the future agreement of the parties, the appellate court held that this "radical uncertainty" as to a material feature of the sales agreement rendered it incapable of specific performance. (P. 823; see also *Bruggeman* v. *Sokol, supra,* 122 Cal.App.2d 876, 881.)

The rule underlying the foregoing cases is that when something is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. "Since either party, by the very terms of the promise, may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise." (*Gould* v. *Callan, supra,* 127 Cal.App.2d 1, 5; *Devereaux* v. *Harper,* 210 Cal. App.2d 519, 525 [26 Cal.Rptr. 837].) In the instant case, the subordination agreement contains none of the provisions deemed essential by the appellate courts of this state, but left such provisions to the future agreement of the parties. Accordingly, the lower court was justified in concluding that the subordination clause in question rendered the contract uncertain and indefinite as a matter of law.

Plaintiff relies upon the following authorities: *King* v. *Stanley, supra,* 32 Cal.2d 584; *Ellis* v. *Mihelis,* 60 Cal.2d 206 [32 Cal.Rptr. 415, 384 P.2d 7];[4] *McKinley* v. *Lagae,* 207

---

[4] A hearing was granted by the Supreme Court. Although the decision of the intermediate court was overruled in other respects the Supreme Court was also of the opinion that the contract in question was not uncertain.

Cal.App.2d 284 [24 Cal.Rptr. 454]; *San Francisco Hotel Co.* v. *Baior,* 189 Cal.App.2d 206 [11 Cal.Rptr. 32]; *Wise* v. *Reeve Electronics, Inc.,* 183 Cal.App.2d 4 [6 Cal.Rptr. 587]; and *Yucca Water Co.* v. *Anderson,* 177 Cal.App.2d 253 [2 Cal.Rptr. 162]. Except for *Ellis,* none of these cases involved a subordination agreement or a security transaction. In *King,* the question before the court was whether certain informal writings between the interested parties amounted to a contract for the sale of realty. The purported agreement was for a consideration in cash. The Supreme Court held that the material factors to be ascertained from a contract for the sale of real property are the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred, describing it so it may be identified; and that where these matters are sufficiently definite the contract may be specifically enforced. It should be noted that in *Gould, Roven* and *Kessler* the factors necessary to the validity of a written contract as announced in *King* were present, but specific performance was nevertheless denied because of the absence of provisions material and essential to contracts providing for a deed of trust as security for the obligation. *Ellis, McKinley* and *Baior* are merely enunciatory of the principle stated in *King* as applied to the particular facts of each case. In *Ellis* there was no omission of essential provisions in the portion of the contract providing for security on the unpaid balance by a first deed of trust. There the balance of $130,000 was to be paid by a note bearing interest at 5 per cent per annum in specified installments. *McKinley* deals with the identification of the property to be sold in a listing agreement, deposit receipt and escrow instructions. The *Baior* case involves the identification of the buyer who was referred to as " 'Fred Whitman or nominee'. . . ." (P. 213.) The *Wise* case applies another principle declared in *King,* i.e., that usage and custom may be used to imply terms where no contrary intent appears from the other terms of the contract.[5] It involved evidence as to custom in the payment of commissions where a representative is given an exclusive territory. While *Yucca* likewise cites *King* with respect to the custom rule, the case involves a contract which failed to describe or identify the " 'tract or tracts' " to which reference

---

[5]In *King,* it is stated: "In the absence of express conditions, custom determines incidental matters relating to the opening of an escrow, furnishing deeds, title insurance policies, prorating of taxes, and the like." (P. 589.)

was made. (P. 256.) The trial court ruled that the contract was ambiguous and permitted parol evidence of the transaction between the parties. However, the testimony did not remove the ambiguity. Accordingly, specific performance was refused because the contract was not rendered certain.

It is also contended by plaintiff that the subject subordination clause may be rendered certain by the admission of evidence of custom, and that therefore the trial court should have permitted the cause to proceed to trial so as to permit the introduction of evidence to interpret the contract. ■ The principle relied upon is the rule that " ' " [t]he law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained. . . ." ' " (*McIllmoil* v. *Frawley Motor Co.*, 190 Cal. 546, 549 [213 P. 971]; *California Lettuce Growers, Inc.* v. *Union Sugar Co., supra,* 45 Cal.2d 474, 481.) ■ It is a well-established rule that evidence of usage and custom may be introduced as an instrument of interpretation, but may not be used to create a contract. (*Rabin* v. *Craft,* 100 Cal.App.2d 808, 811 [224 P.2d 843]; *Ghiselin* v. *John Hancock etc. Ins. Co.,* 79 Cal.App.2d 438, 441 [180 P.2d 50].) Accordingly, it is a well-established principle that although custom is admissible for the purpose of interpreting the contract or agreement of the parties, or for furnishing details not expressly covered thereby, it is not admissible to *establish* a contract. (*Reely* v. *Chapman,* 177 Cal.App.2d 260, 263 [2 Cal.Rptr. 188]; *King* v. *Stanley, supra,* pp. 588-589.)

Reliance is placed by plaintiff upon *California Lettuce Growers, Inc.,* wherein the Supreme Court said: " ' It is the general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears; that the usage forms a part of the contract, and that evidence of usage is always admissible to supply a deficiency or as a means of interpretation where it does not alter or vary the terms of the contract,' quoting from *Hind* v. *Oriental Products Co.,* 195 Cal. 655, 667 [235 P. 438]. . . ." (P. 482.) In *California Lettuce Growers, Inc.,* it was specifically alleged that the parties knew and understood that there was a standard practice to enter into certain supplemental contracts in sugar beet transactions. It was there held that this allegation, pleaded with the history of the parties' commercial transac-

tions, was sufficient to put the prior dealings of the parties and the practice of the industry in issue. In the case at bench plaintiff did not plead that the parties contracted with reference to custom or usage of the trade. While the declaration of Hicks in opposition to the motion for summary judgment avers that there were certain procedures, practices and customs in the building industry with respect to construction loans, it does not allege that defendants knew or understood such procedures, practices or customs, nor does it aver that the parties contracted with reference thereto. *California Lettuce Growers, Inc.*, however, is distinguishable from the instant case because there the allegations were sufficient to show that there were ascertainable provisions of the contract before it. In the present case, however, there is no contract upon which the court may act because the subordination clause in question is uncertain and indefinite as a matter of law and is not susceptible to interpretation. It is significant to note that *California Lettuce Growers, Inc.*, recognizes the principle that where the intention of the parties in material particulars cannot be ascertained, but is left to the subsequent agreement of the parties, the purported contract is merely an agreement to agree and therefore *nudum pactum* until such future agreement.

Research reveals only one California case that has permitted the use of custom evidence to interpret a contract involving a subordination clause. In *Burrow* v. *Timmsen, supra,* 223 Cal.App.2d 283, the sales agreement contained the following provisions: " 'Said trust deed to carry usual Title Insurance & Trust Co. form of subordination allowing above trust deed to automatically subordinate to construction loan and/ or permanent loan not to exceed $300,000.00, maximum interest rate of 9% and maximum maturity date of 30 years. . . .' " (P. 286.) The subordination agreement itself contained the following clause: " '[S]aid loan shall be made by a bank, life insurance company, or correspondent thereof, building or saving loan association, or other institutional lender.' " (Fn. 1, p. 287.) In reversing the lower court's decision granting a motion for a judgment on the pleadings, the appellate court held that such a provision was not so uncertain and indefinite that the intention of the parties could not be ascertained. It concluded that while there were a few uncertainties in the agreement these could be removed by receiving evidence on the common practices of responsible lending institutions. The gist of the reviewing court's hold-

ing is that since the loan was to be obtained from one of the lending institutions particularly designated, it was the intention of the parties that the terms and conditions of the construction loan should conform to the practices of these responsible and conservative lending institutions. It should be here noted that the subordination agreement in *Burrow* contained the provisions declared necessary in *Kessler, Gould* and *Roven,* including the clause limiting the source from which the party could make the loan. The evidence of common practice in lending institutions would be used to interpret whether there was a requirement for installment payments in view of the absence of any such provision in the agreement and in view of the provision that the maturity date would be 30 years hence. Plaintiff seeks to distinguish *Kessler, Gould* and *Roven* on the ground that they failed to consider evidence of custom in relation to a subordination agreement. The answer to this contention is that these cases were dealing with the omission to provide material and essential provisions, while in *Burrow* the court had ascertainable provisions before it, the omissions being to *incidental* matters which could be determined by evidence of custom. As already pointed out, essential and material provisions have been omitted in the present case. To permit evidence of custom would result in the use of custom to *create* a contract.

### Was the Uncertainty Removed by Waiver of the Provisions of the Subordination Clause?

*No.* Plaintiff also argues that even if the subordination clause is uncertain as a matter of law, it has eliminated the uncertainty by waiving the benefit of the clause. The purported waiver contained in Hick's declaration has already been alluded to. The attempted waiver is ineffective for two reasons. First, it is no more than a conditional waiver of the subordination provision made on the eve of a summary judgment procedure. The cases cited by plaintiff in support of its proposition deal with an unconditional waiver, usually effective before the commencement of the trial. Plaintiff's offer amounts to a radical alteration of a written contract inconsistent with the principle that the parties to a written agreement have a right to rely on the written contract as the complete and final memorial of their intentions. Secondly, if a party were permitted to waive defective provisions going to the essence of a contract, the court, in effect, would be allowing the unilateral creation of a new, different contract.

A party to a contract cannot erase uncertainty therefrom by waiving such uncertainty and thereby restore its contractual validity. (*Klein* v. *Markarian, supra,* 175 Cal. 37, 41; *Roven* v. *Miller, supra,* at pp. 399-400.) It should be here noted that the cases cited by plaintiff in support of its position deal with the waiver of a conditional right of the vendee, which, if allowed, leaves the contract an enforceable obligation according to its own terms as agreed upon by the parties. (See *Wesley N. Taylor Co.* v. *Russell,* 194 Cal.App.2d 816, 828-829 [15 Cal.Rptr. 357]; *Pease* v. *Brown,* 186 Cal.App.2d 425, 427-429; *O'Connell* v. *Zimmerman,* 157 Cal.App.2d 330, 335-336 [321 P.2d 161]; *Johnson* v. *Lehtonen,* 151 Cal.App.2d 579, 582 [312 P.2d 35].) In each of the above cases, the right waived was a condition to the existence of the contract, exclusively the right of the vendee and affecting his obligation only. None of plaintiff's cases discussed the propriety of a waiver of a provision which rendered the contract uncertain as a matter of law. We hold, therefore, that the uncertainty in the contract at bench could not be waived unilaterally by plaintiff.[6]

*Was the "Release Clause" Uncertain as a Matter of Law?*

▮▮▮▮ *No.* In its memorandum decision the trial court also announced that it found the "release clause" to be uncertain and unreasonable in equity on the ground that the provision placed the sellers in a position where they could be deprived of all choice lots or part of the lots without personal liability on the part of the buyer for the remainder. This conclusion was erroneous. The release clause is not uncertain as a matter of law. In the first place the agreement shows that the price of each lot was $875 with the exception of one lot, Lot 5 of Block 33, which was priced at $2,000. A reading of the agreement discloses that the buyer was obligated at all times to purchase all the lots and no lot would be released from the lien of the deed of trust without full payment of the price for that lot. Even after one or several lots were released, the sellers' deed of trust would remain in force upon the remaining lots together with the sellers' right to foreclose on those lots.[7] Aside from the $2,000 lot, the trial

---

[6]There is nothing in the record to indicate that plaintiff's offer to waive the subordination clause was accepted by defendants.

[7]The agreement does not provide that the security is to be decreased in the same proportion as individual lots are released from the lien of the deed of trust.

court's assumption that "choice lots" existed is belied by the fact that the purchase price for each lot is identical.

### Adequacy of the Consideration

The briefs in the instant case have raised the issue of adequacy of the consideration. The lower court in its memorandum decision made no finding on this point, but merely stated the following: "The only consideration and obligation of buyer provided in the contract is a note secured by a Deed of Trust against the property sold. . . ." Adequacy of consideration is a pleading problem and is so handled by the parties in the briefs. It was not, therefore, a proper subject of a motion for summary judgment. However, the lower court apparently decided the instant motion on the basis of the pleadings. We need not consider the susceptibility of the complaint to either a demurrer or a motion for judgment on the pleadings on the ground that adequacy of consideration was improperly pleaded, because no attack on that ground was made in the court below. Moreover, we need not discuss the issue of consideration because the contract is void and unenforceable due to the uncertainty and indefiniteness hereinbefore alluded to.[8]

The judgment is affirmed.

Bray, P. J., and Sullivan, J., concurred.

---

[8]The briefs have discussed the question whether plaintiff is entitled to damages for breach of contract in lieu of specific performance. At oral argument this ground of appeal was abandoned by plaintiff, it appearing that no cause of action for alleged damages was pleaded or stated.