[Civ. No. 28108. First Dist., Div. One. May 21, 1971.]

Estate of HARVEY A. RUSSELL, Deceased.
BANK OF AMERICA, as Trustee, etc., Petitioner and Respondent, v.
VICTOR ALBERT LAZZERONI II, a Minor, etc.,
Claimant and Appellant;
JOHN M. THOMPSON, as Guardian ad Litem, etc.,
Claimant and Respondent.

## COUNSEL

Garth V. Lacey for Claimant and Appellant.

No appearance for Petitioner and Respondent.

Thompson & Hubbard, Ralph W. Thompson and Russell A. Thomsen for Claimant and Respondent.

## OPINION

**MOLINARI, P. J.**—This appeal presents a question of first impression in this state. It concerns the effect of adoption out of a testator's family of a great-grandchild who, except for his adoption, would be included in a description of the class of remaindermen of a testamentary trust. Stated more precisely, the issue is as follows: Where a testamentary trust provides for distribution to a class of remaindermen described as the "children or issue surviving" of certain primary beneficiaries with life estates therein, does the class of remaindermen include a child who was born after the testator's death and who was adopted by strangers in blood to the testator before the date of the termination of the trust, or is such person excluded from said class of remaindermen by virtue of the fact of his adoption out of the family? We have concluded that the adoption results in such exclusion. Accordingly, the order of the trial court must be affirmed.

Testator Harvey A. Russell died on May 19, 1960, leaving a will executed on March 7, 1959. In the course of the administration of his estate the probate court made its decree of preliminary distribution on May 25, 1962 and its decree of final distribution on December 28, 1962. Each of these decrees established a testamentary trust in the language of paragraph "Sixth" of said will. Under its terms the trust continues during the lifetime of various named "primary beneficiaries" and terminates upon the death of the last survivor of the "primary beneficiaries" at which time the trust estate is to be paid and distributed to the remaindermen. During the existence of the trust the net income is to be distributed to the "primary beneficiaries" in monthly or other convenient installments. If any of the "primary beneficiaries" shall die before the termination of the trust with "children or issue surviving" such net income from his or her share of the trust is to be paid to such children or issue "upon the principle of representation" until the termination of the trust, and upon the termination of the trust the persons who are then receiving the income of the trust shall receive the trust estate in the same proportions as they are entitled to

receive such income. Upon the termination of the trust if any of the "primary beneficiaries" shall have died without "children or issue surviving," his or her share of the trust estate shall be distributed so as to augment proportionately the shares of the trust held for the benefit of the other beneficiaries. Under the provisions of the trust it is specified that the words "child," "issue" and "descendant" as used in the trust shall be construed to include children legally adopted at the time of the testator's death and shall exclude children legally adopted after the time of his death.

On August 27, 1963, Carol Ann Camille Spear (hereinafter Carol Spear), one of the named primary beneficiaries, gave birth to a child named Victor. When Victor was approximately five months old he was given up for adoption to the Children's Home Society and he was subsequently adopted by third persons unrelated in blood to the testator.

Pursuant to Probate Code section 1120,[1] the trustee petitioned the court for instructions as to whether Victor had any interest in the trust after his adoption. The proceeding evolved into a contest between the guardian ad litem for Victor (appellant herein) and the guardian ad litem for the designated minor remaindermen and all unborn remaindermen (respondent herein). At the hearing only one witness, the aforementioned Carol Spear, testified. She was called by appellant and her testimony concerned itself with the fact and date of Victor's birth, his subsequent adoption, and her identity as a beneficiary of the subject trust. The only other evidence adduced by appellant was a certified copy of the aforementioned decrees of preliminary and final distribution. No evidence was presented or adduced by respondent.

The trial court made findings of fact respecting the fact of Victor's birth and his subsequent adoption, and found that at the time of decedent's death Victor's natural mother, Carol Spear, was living and that Victor was yet unborn. The court also found that the estate of decedent had been probated and that a final decree of distribution in said estate had been entered establishing the testamentary trust of decedent according to the terms of which Carol Spear was a beneficiary whose share, upon her death, would go to her children or issue surviving her. Further findings were made as follows: "The decedent . . . was familiar with the status of adopted persons"; that he "did not provide for the possibility of class remaindermen being adopted out of his family by third persons," and that he "intended his will would fit and be compatible with the general body of the law and public policy in effect at the time the will was executed." From these

---

[1]Unless otherwise indicated, all statutory references are to the Probate Code.

"findings"[2] the court concluded that any rights Victor may have had under decedent's will or trust as a class remainderman were dependent on his surviving Carol Spear as her child or issue; that Victor ceased to have the status of a child or issue of Carol Spear "as the words 'children or issue surviving' are used in the decedent's trust and the decree of Final Distribution . . . on the date of his adoption . . ."; and that Victor "is not a class remainderman under the terms of the decedent's will or trust . . . ." Upon the basis of these conclusions the court directed the trustee to exclude Victor and his issue from sharing in the corpus or income of the trust established by the will of decedent. It is from this order that appellant appeals.

The announcement of the trial court's decision prior to the making of its findings of fact and conclusions of law was in the form of a memorandum opinion. Such an opinion may not be used to alter or impeach the court's findings or judgment (*DeArmond* v. *Southern Pacific Co.,* 253 Cal.App.2d 648, 653 [61 Cal.Rptr. 844]; *Magna Development Co.* v. *Reed,* 228 Cal.App.2d 230, 235, fn. 2 [39 Cal.Rptr. 284]), but it may be resorted to to ascertain the grounds of its decision (*Warren Southwest, Inc.* v. *Wicks,* 276 Cal.App.2d 152, 155 [80 Cal.Rptr. 723]; *Arruda* v. *Arruda,* 218 Cal.App.2d 410, 417 [32 Cal.Rptr. 257]), to learn the process by which it reached its decision (*Warren Southwest, Inc.* v. *Wicks, supra; Magna Development Co.* v. *Reed, supra*), to ascertain its theory of decision (*Warren Southwest, Inc.* v. *Wicks, supra; Estate of Johnson,* 240 Cal.App. 2d 742, 747 [50 Cal.Rptr. 147]) or to ascertain the basis for a conclusion of law where the conclusion gives no explanation for a ruling (*Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 283 [32 Cal.Rptr. 830, 384 P.2d 158]).

The memorandum opinion indicates that the trial judge concluded that the testator intended the phrase "children or issue surviving" to be governed by the policy expressed in section 257 in effect at the time the will was executed. That section, in pertinent part, provides: "An adopted child shall be deemed a descendant of one who has adopted him, the same as a natural child, for all purposes of succession by, from or through the adopting parent the same as a natural parent. An adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by adoption, . . . nor does such adopted child succeed to the estate of a relative of the natural parent, . . . ."

The memorandum opinion also discloses that the trial court's conclusion

---

[2]We observe that all of these determinations are not properly findings of fact but that some constitute conclusions of law.

that the testator was familiar with the status of adopted persons was based on the statement in the will that he had adopted his daughter Camille and she in turn had adopted Carol Spear. The opinion also states that the testator evidenced an intention in his will to accept the spirit of section 257 when he chose to accept Carol Spear as though of the blood, "but overlooked the possibility of 'adopted-out' children." The basis for the latter conclusion, states the opinion, is to be found in subdivision "H" of paragraph "Sixth" of the will which specifically provides that the words "child," "issue," and "descendant," as used therein, should "be construed to include children legally adopted at the time of my death and shall exclude children legally adopted after the time of my death."

Victor contends that since the decree of distribution had become final prior to his adoption the court was precluded, in the absence of any contention of ambiguity, from examining the will to determine the testator's intentions. He asserts that since there was no issue before the trial court as to whether the subject decrees of distribution were ambiguous, the decrees are conclusive as to the validity and interpretation of the will, including the rights of beneficiaries. The thrust of Victor's contention is that upon his birth he became a contingent remainderman since at that time he was "a child" or "an issue" of Carol Spear under the terms of the trust as spelled out in said decrees. Accordingly, he argues that his subsequent adoption does not defeat his rights as such remainderman. Since both the preliminary and final decree of distribution contain identical language, insofar as the testamentary trust is concerned, we shall hereinafter refer to these decrees collectively as the "decree."

Before proceeding to discuss the validity of these contentions we take cognizance of appellant's motion to augment the record before us to include a copy of the testator's will and certain documents in Victor's adoption proceedings. We reserved our ruling on the motion until we were prepared to decide the case on the merits. For the reasons hereinafter indicated the will is not necessary to our disposition of the case. With respect to the adoption documents, we have concluded that they are not needed to aid us in determining the appeal. There is no question on appeal as to the legality of Victor's adoption. Such legality and the fact of adoption is conceded by appellant. Moreover, the court below specifically found that Victor was legally adopted. That finding is not challenged. Accordingly, the motion to augment must be denied.

■ Adverting to appellant's contentions, we first take note of the applicable principles of construction which are well settled. These principles are stated in *Estate of Callnon,* 70 Cal.2d 150, 156-157 [74 Cal.Rptr.

250, 449 P.2d 186],[3] as follows: "A decree of distribution is a judicial construction of the will arrived at by the court ascertaining the intent of the testator. [Citations.] Once final, the decree supersedes the will [citations] and becomes the conclusive determination of the validity, meaning and effect of the will, the trusts created therein and the rights of all parties thereunder. [Citations.] . . . 'where the decree of distribution is contrary to the provisions in the will, the decree controls and prevails over the terms of the will with respect to the distribution of the property.' [Citations.] Only if the language of the decree is 'uncertain, vague or ambiguous' [citations] may resort be had to the will to interpret but not to contradict the decree. [Citations.] . . . 'if the distributive portions of the decree are free from ambiguity, . . . resort may not be had to the provisions of the will . . .' in order to create an ambiguity. [Citation.]"

In the instant case no contention was made by the parties in the trial court that the decree is uncertain, vague or ambiguous, nor was the will or any extrinsic evidence offered or adduced for the purpose of interpreting the decree. While the matter was under submission the trial court apparently determined that the decree is uncertain and ambiguous since it resorted, in part, to the will in interpreting the decree. The trial court's resort to the will was apparently done by taking judicial notice of it. The record discloses that, although the entire probate file was physically before the court, only the subject decrees contained in the file were offered or presented into evidence.

Court records are matters which *may* be judicially noticed. (Evid. Code, § 452, subd. (d); *Flores* v. *Arroyo,* 56 Cal.2d 492, 496 [15 Cal.Rptr. 87, 364 P.2d 263]; *Smith* v. *Hatch,* 271 Cal.App.2d 39, 49 [76 Cal.Rptr. 350].) Such records may be judicially noticed if a party requests that such notice be taken, furnishes the court with sufficient information to enable it to take judicial notice, and gives each adverse party sufficient notice of the request to prepare to meet it. (Evid. Code, § 453; *Smith* v. *Hatch, supra.*) Here no such request was made. The court may, however, take judicial notice of such court records, even when not requested to do so, because it has the discretionary power to take such notice under section 452 of the Evidence Code. (See comment to Evid. Code, § § 452, 453.) However, where the matter to be noticed is one that is of *substantial consequence to the action,* the party adversely affected must be given a reasonable opportunity, before the jury is instructed or before the cause is submitted for decision by the court, to present information relevant to the propriety of taking judicial notice and as to tenor of the matter to be noticed. (Evid.

[3]This case exhaustively cites and reviews the pertinent case authority.

Code, § 455, subd. (a); see comment to Evid. Code, §§ 453, 455.) "If the judge does not discover that a matter should be judicially noticed until after the cause is submitted for decision, he may, of course, order the cause to be reopened for the purpose of permitting the parties to provide him with information concerning the matter." (Comment, Evid. Code, § 455.)

In the present case there can be no question that decedent's will was of substantial consequence to the action. The record discloses, however, that the court took judicial notice of the will without a request to do so by any party and that it did not afford appellant, as the party adversely affected, an opportunity to present information as to the propriety of taking judicial notice either before the cause was submitted for decision or upon a reopening of the case for such purpose. Accordingly, the trial court was not entitled to take judicial notice of decedent's will insofar as that document contained matters not included in the decree. In this connection we again note that paragraph "Sixth" of the will was repeated and incorporated verbatim in its entirety in the decree. All the provisions of paragraph "Sixth" of the will were, therefore, properly before the trial judge for consideration and interpretation, including subdivision "H" aforementioned. Under these circumstances, the only matter improperly considered by the trial court, because it was outside the record, is the provision in the will, deemed relevant by the trial court on the issue of the testator's intent, which indicates the testator's familiarity with adopted persons, i.e., that provision alluded to by the court in its memorandum opinion indicating that he had adopted his daughter Camille and she had adopted her daughter Carol Spear.

■ Without the aid of extrinsic evidence the subject decree must be interpreted upon an independent examination of its terms notwithstanding that such terms may be uncertain, vague or ambiguous, since it is solely a judicial function to interpret a written instrument where the interpretation does not turn upon the credibility or aid of extrinsic evidence. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Russell,* 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353].) In making this interpretation we are not bound by the construction of the instrument made by the trial court. (*Parsons* v. *Bristol Development Co., supra; Estate of Russell, supra.*)

■ Adverting to the testamentary trust provided for in the decree, we apprehend that we are particularly called upon to interpret the meaning of the phrase "children or issue surviving" as this phrase is used with respect to the remaindermen who, in the event of the death of a primary beneficiary,

are to receive the share of such beneficiary upon the termination of the trust or the income from said share prior to such termination. In proceeding to construe the meaning of this phrase in the context of the provisions in which it is used, we first observe that when Victor was adopted his relationship to his natural mother was severed and a new relation was created between Victor and the adopting parents. (Civ. Code, §§ 228 and 229; *Matter of Cozza,* 163 Cal. 514, 523-524 (126 P. 161) [overruled on other grounds, *Adoption of Barnett,* 54 Cal.2d 370, 378 (6 Cal.Rptr. 562, 354 P.2d 18)].) By virtue of such adoption Carol Spear was relieved, from the time of the adoption, of all parental duties toward, and all responsibility for, Victor, and she had no right over him. (Civ. Code, § 229; *In re Darling,* 173 Cal. 221, 223-224 [159 P. 606]; *Estate of Goulart,* 222 Cal.App.2d 808, 820 [35 Cal.Rptr. 465].) In sum, Carol Spear, from the time of the adoption, was no longer Victor's parent in the eyes of the law. (*Estate of Goulart, supra; In re Darling, supra,* at p. 223.)

In *Estate of Heard,* 49 Cal.2d 514 [319 P.2d 637], the Supreme Court was presented with the question whether the phrase "lawful issue" used in a will included a child adopted by the testator's son after the will was made and the testatrix was deceased. In holding that the testamentary disposition of the residue of the trust to the "lawful issue" of her son included an adopted child, the reviewing court applied the rule that "Courts . . . by necessity, draw on the statutes, case law and public policy in construing an instrument as they must suppose that the draftsman did not intend to pursue a course contrary to them unless he so states." (At p. 522.) In taking cognizance of this principle the Supreme Court observed that a testator is bound to know existing statutes affecting testamentary dispositions and that, unless a contrary intent is expressed, a testator intends that his will would be compatible with the general body of the law and public policy. "We cannot suppose," said the court, "that wills are made in a vacuum; that the status of an adopted child being the same as a biological offspring, which is the public policy of the state, may be completely ignored, or that it was ignored by a testator when making a will any more than he may be said to ignore many other rules of law and public policy." (At p. 522.)

The public policy alluded to in *Heard* is that which recognizes that adopted children are lineal descendants of their foster parent and are in the line of descent from him by virtue of statutory command, the same as if that line had been established by blood ties. (49 Cal.2d at p. 518.) In this state such policy has been expressed by the Legislature as embodied in the adoption statutes (Civ. Code, §§ 221, 227, 228) and in the succes-

sion statute providing for the inheritance rights of adopted children (§ 257). (See *Estate of Heard, supra,* 49 Cal.2d 514, at pp. 519-522.)

The situation presented in the instant case is the converse of that involved in *Heard.* However, the principles therein expressed are equally applicable here. We note, initially, that the decree constitutes a judicial construction of decedent's will arrived at by the probate court ascertaining the intent of the testator. (*Estate of Callnon, supra,* 70 Cal.2d 150, 157 [74 Cal.Rptr. 250, 449 P.2d 186]; *Whittingham* v. *California Trust Co.,* 214 Cal. 128, 132 [4 P.2d 142].) As already observed, the court, in judicially construing the testator's will in order to ascertain his intent, adopted verbatim the language and terminology used by the testator himself in paragraph "Sixth" of the will. The decree does not express an intent contrary to the statutes, case law or the public policy with respect to the inheritance rights of adopted children. We are entitled to assume, therefore, that the court ascertained that the testator did not intend to pursue a course contrary to that expressed in the statutes, case law and public law with regard to the inheritance rights of adopted children, but, rather, that he intended his will to be compatible with such law and public policy. By the same token we are also entitled to assume that the court itself was aware of such law and public policy when it made its decree of distribution. Under that law and public policy, an adopted child, upon the severing of the relationship between him and his natural parent, succeeds to or inherits the estate of one who has adopted him and not the estate of his natural parent or a relative of the natural parent. (§ 257; see *Estate of Garey,* 214 Cal.App.2d 39, 41-42 [29 Cal. Rptr. 98]; *Estate of Goulart, supra,* 222 Cal.App.2d 808, 820-823.)

We perceive further that in the decree the court ascertained that the testator intended his will to be compatible with the law and public policy here under discussion. The decree specifically provides that the words "child," "issue," and "descendant" as used in the testamentary trust provisions include within their meaning children legally adopted at the time of the testator's death but do not include within such meaning children legally adopted after his death. The phrase excluding children adopted after the testator's death is susceptible of the construction that it includes children adopted into the family as well as those adopted out of it. If we construe this phrase to mean that it has reference only to children legally adopted into the family, the decree is left in the posture where the probate court has judicially construed that the testator in his will has not said anything about children who would be adopted out of the family after his death. Such construction leaves us without any basis other than the rule declared in *Heard* in interpreting the decree with respect to the inheritance rights of children adopted out of the family. The decree is, therefore, interpreted

to mean that the testator did not intend to include within the meaning of the words "children or issue surviving" children who would be adopted out of the family. Under such interpretation Victor, at the moment of his adoption, by operation of law, ceased to be and was no longer the child or issue of Carol Spear. Upon Carol Spear's death Victor will not be deemed by the laws of this state to be her "child" or "issue."

Appellant argues that section 257 is limited in its application solely to the rights of an adopted child as to his inheritance by succession and that it has no application to the rights of an adopted child where his interests are derived from a testamentary disposition as in the instant case. This contention is without merit. ■ Although "succession" is defined in section 200 as "the acquisition of title to the property of one who dies without disposing of it by will," it frequently possesses the somewhat broader meaning of "the acquisition of rights upon the death of another." (*Chambers* v. *Lamb,* 186 Cal. 261, 266 [199 P. 33].) Accordingly, the decisions have interpreted the term "succession" as it is used in section 257 since its amendment in 1955[4] as having the broader meaning. Accordingly, the provisions of section 257 have been applied to situations where the question was whether an adopted child was an heir of the decedent under a testamentary disposition and as such entitled to succeed to the decedent's estate. (See *Estate of Heard, supra,* 49 Cal.2d 514, 516-517 [testamentary trust]; *Estate of Garey, supra,* 214 Cal.App.2d 39, 40 [will]; *Estate of Goulart, supra,* 222 Cal.App.2d 808, 811, 819 [will].) In *Goulart,* the court, in concluding that section 257, as amended in 1955, applies to testamentary dispositions as well as to rights of succession (at pp. 822-823) observed that the enactment of the amended statute intended "to accomplish a complete severance of the former relationship of the adoptee with his natural, or biological, relatives, and to make them no longer 'kindred'

---

[4]Section 257 before September 7, 1955 provided as follows: "An adopted child succeeds to the estate of one who has adopted him, the same as a natural child; and the person adopting succeeds to the estate of an adopted child, the same as a natural parent.

"An adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by the adoption, nor does such natural parent succeed to the estate of such adopted child."

After September 7, 1955 section 257 provided as follows: "An adopted child *shall be deemed a descendant* of one who has adopted him, the same as a natural child, *for all purposes of succession by, from or through the adopting parent,* the same as a natural parent.

"An adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by adoption, nor does such natural parent succeed to the estate of such adopted child, *nor does such adopted child succeed to the estate of a relative of the natural parent, nor does any relative of the natural parent succeed to the estate of an adopted child.*" (Italics added.)

in the eyes of the law, and on the other hand, to create a new kinship." (At p. 820.)

The motion to augment the record is denied. The order appealed from is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 14, 1971.